OPINION
{¶ 1} Mark Musselman appeals from his conviction and sentence on one count of engaging in a pattern of corrupt activity, one count of aggravated theft by deception, and numerous counts of forgery involving a value of more than $100,000, forgery involving a value of between $5,000 and $100,000, and tampering with government *Page 2 
records.
 {¶ 2} Musselman advances seven assignments of error on appeal. First, he contends the trial court erred in overruling a pre-trial motion to suppress evidence. Second, he claims the trial court erred in allowing the State to impeach him with evidence that had not been disclosed beforehand. Third, he asserts that the trial court erred in failing to provide an adequate record of the numerous bench conferences that occurred during trial. Fourth, he argues that the trial court erred in allowing the State to introduce other-acts evidence against him. Fifth, he maintains that the trial court erred in convicting him of allied offenses of similar import. Sixth, he contends counts one and three through forty-eight of his indictment were defective under State v.Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, because they failed to include a mens rea element. Seventh, he claims the foregoing defect "permeated the entire indictment and trial," requiring the indictment to be declared void.
 {¶ 3} The present appeal stems from Musselman's involvement in a scheme to buy properties through a mortgage-broker business under the forged names of recently deceased people. According to the State, Musselman and his partner, Mark Edwards, falsified documents so a mortgage lender would loan far more money on the property than the selling price. The additional money was paid to the BB Foundation, an organization established by Musselman and Edwards, ostensibly for repairs to the properties. The State alleged, however, that the funds deposited into the BB Foundation account were used for the personal gain of Musselman and Edwards. The State's case was based on transactions involving twelve properties. The buyers of these properties all were dead at the time of the real estate transactions. *Page 3 
 {¶ 4} Shortly before trial, Edwards pled guilty to the charges against him and testified about Musselman's participation in the scheme. For his part, Musselman admitted that real estate documents had been falsified and that money had been stolen through the BB Foundation. Musselman maintained, however, that he had been duped by Edwards, who alone had orchestrated the scheme and stolen the money. Musselman testified at trial and denied committing any forgeries or taking part in any wrongdoing. A jury nevertheless convicted him on one count of engaging in a pattern of corrupt activity, one count of aggravated theft by deception, nine counts of forgery involving a value of more than $100,000, twenty-five counts of forgery involving a value of between $5,000 and $100,000, and twelve counts of tampering with government records. The trial court imposed an aggregate twelve-year prison sentence along with a multi-million-dollar fine and a restitution order. This timely appeal followed.
 {¶ 5} In his first assignment of error, Musselman contends the trial court erred in overruling his motion to suppress evidence. Specifically, he challenges the trial court's failure to suppress paperwork taken from his residence, information obtained from a computer removed from his home office, and the contents of his briefcase.
 {¶ 6} Suppression hearing testimony reflects that Musselman's wife, Diana, took the paperwork herself and gave it to the police. With regard to the computer, Musselman's wife asked the police to come to the home and retrieve it. Finally, the record reflects that she gave the briefcase to a local attorney and asked him to give it to police. Musselman contends the trial court should have suppressed all of this evidence because his wife lacked authority to permit the police to search it. In particular, Musselman contends his wife did not have sufficient "common authority" over the items to allow her to turn them over to *Page 4 
police. He also claims police should have known that she lacked sufficient authority over the items. The trial court rejected Musselman's argument, finding that his wife did have common authority over the items she gave the police. The trial court additionally held that Musselman had abandoned the items, thereby giving his wife the right to do whatever she wished with them.
 {¶ 7} Upon review, we find no merit in Musselman's argument. Suppression hearing testimony established that Musselman had moved out of the marital home in late 2002. In early 2003, he sent his wife an apparent suicide note with a motel room key. The note instructed her to go to the motel room to collect his belongings, which included the briefcase Ms. Musselman took from the room and gave to an attorney for delivery to the police. Shortly thereafter, Musselman's wife appeared at the police station and gave officers paperwork she had gathered from the marital home. She later contacted police and asked them to pick up the computer from her home.
 {¶ 8} Based on Musselman's disappearance and the contents of the suicide note, the trial court did not err in finding that he had abandoned the items in question. "It is rudimentary that one does not have standing to object to a search and seizure of property that he has voluntarily abandoned." State v. Freeman (1980), 64 Ohio St.2d 291,296-297. "The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." Id. Musselman relinquished any interest in the briefcase, the paperwork, and the computer when he left the marital home, indicated his intent to commit suicide, and disappeared for several *Page 5 
months. Moreover, the State correctly points out that Musselman's wife certainly had common authority over the briefcase and the computer. The briefcase was among the items Musselman left behind for her in his motel room, and she testified that she sometimes worked on the computer and had authority to dispose of it as she wished. Musselman's first assignment of error is overruled.
 {¶ 9} In his second assignment of error, Musselman claims the trial court erred in allowing the State to impeach him with evidence that had not been disclosed beforehand. This argument concerns an Indiana state identification card bearing Musselman's photograph but issued in the name of Kenneth Hagland.
 {¶ 10} On cross examination, Musselman denied ever having tried to change his identity. The prosecutor then inquired whether he had obtained an Indiana state identification card with his picture under the name Kenneth Hagland. Musselman denied that he had done so. Over defense counsel's objection, the prosecutor responded by producing such a card and showing it to Musselman, who denied knowing where it came from. Shortly thereafter, the trial court permitted counsel to question police office Scott Breisch out of the jury's presence about the origin of the identification card. Breisch testified that he first learned about the possibility of the card's existence from co-defendant Mark Edwards during trial on Tuesday, April 10, 2007. He located the proper officials in the State of Indiana and inquired about the card on the afternoon of Friday, April 13, 2007. According to Breisch, he then spent part of Monday, April 16, 2007 locating the identification card. Indiana officials sent it to him by overnight mail, and Breisch received the card on the morning of April 17, 2007. He informed the prosecutor at that time. The prosecutor used the card one day later on April 18, 2007 when cross examining Musselman. *Page 6 
 {¶ 11} On appeal, Musselman contends the State violated Crim. R. 16 by failing to provide him with a copy of the identification card before the prosecutor used it for impeachment. Specifically, he cites Crim. R. 16(B)(1)(c) and argues that the State was required to disclose the identification card because it was a tangible object material to the preparation of his defense or intended for use by the prosecutor at trial. In response, the State asserts that
 {¶ 12} Crim. R. 16 did not obligate it to turn over the identification card because it could not have known, prior to hearing Musselman deny ever attempting to change his identity, that the card would be useful in cross examination. The State also insists that the identification card was not material to the preparation of Musselman's defense. In particular, the State contends the existence of the card did not contribute to the proof of his guilt and that Musselman's credibility was undermined by a wealth of other evidence.
 {¶ 13} We addressed a somewhat analogous situation in State v.Lewis (July 21, 2000), Clark App. No. 99-CA-0079. In that case, the defendant was charged with corruption of a minor. The victim and eyewitnesses testified that they were fearful of the defendant because he had threatened them. The defendant denied engaging in sexual conduct with the victim. He also denied making any threats. On cross examination, the prosecutor asked the defendant whether he ever had pulled his pants down and placed his buttocks on the face of one witness. The defendant testified that he did not recall such an incident and that he probably would remember if it had occurred. Over the defendant's objection, the trial court allowed the State to introduce a previously undisclosed videotape as rebuttal evidence to corroborate the witness's claim that the defendant had engaged in intimidation. The tape depicted the defendant pulling down his pants and placing his exposed buttocks *Page 7 
on the witness's face.
 {¶ 14} Upon review, we noted that Crim. R. 16(B)(1)(c) obligated the State to turn over tangible objects material to the preparation of the defense or intended to be introduced by the prosecution as evidence or used in cross examination. Id., citing State v. Haddix (1994),93 Ohio App.3d 470. While opining that Crim. R. 16(B)(1)(c) did not apply to rebuttal evidence, we noted that evidence admissible in the prosecution's case-in-chief or used for cross examination of a defendant could not be reserved for rebuttal to avoid the rule. Because the videotape could have been used on cross examination to impeach the defendant's own testimony, we held that it was subject to disclosure under Crim. R. 16(B)(1)(c). We also held that the State's failure to disclose the tape violated the rule.
 {¶ 15} In the present case, the State used the Indiana identification card in its cross examination of Musselman. Moreover, we believe use of the card during cross examination was reasonably foreseeable. The prosecutor knew beforehand that Musselman intended to testify and that he would be cross examined about changing his identity. The prosecutor reasonably should have anticipated that he might deny attempting to do so. Indeed, the record suggests that the State actually did anticipate Musselman's denial. Officer Breisch worked hard to obtain a copy of the identification card before Musselman testified. This supports an inference that the likely use of the card on cross examination was recognized by the State. We see no meaningful distinction between the situation in this case and Lewis, where the defendant on cross examination denied any recollection of placing his bare buttocks on a witness's face. In both cases, the State possessed undisclosed evidence that impeached the defendant's testimony on cross examination. As inLewis, we believe the State should have disclosed the evidence immediately after obtaining it and *Page 8 
before cross examining Musselman. See also Haddix,93 Ohio App.3d at 473-474 (finding that the State violated Crim. R. 16(B)(1)(c) by failing to disclose income tax returns used to impeach the defendant's credibility and testimony on cross examination); but see State v.Hemsley, Williams App. No. WM-02-010, 2003-Ohio-5192, ¶ 18 ("In this case, the IRS form was used only after Hemsley testified that he had not gambled. Use of the document was not a foregone conclusion and depended upon Hemsley testifying about his gambling. We find this is sufficiently remote so that the state was not required to provide the document to Hemsley.").
 {¶ 16} In reaching the foregoing conclusion, we find the State's reliance on State v. Hirtzinger, (1997), 124 Ohio App.3d 40, to be misplaced. In Hirtzinger, defense counsel cross examined a witness about a cellular telephone call she claimed to have made. Defense counsel also asked the witness whether she had an itemized bill for her calls. She responded that she did. On redirect examination, the prosecutor introduced the bill into evidence. Defense counsel objected because the bill had not been disclosed during discovery. Upon review, we found that "the eventuality upon which the prosecution's use of undisclosed evidence was predicated — i.e., the cross examination of [the witness] as to the bill's existence — was sufficiently remote" so that the case fell within the rule of State v. Finnerty (1989), 45 Ohio St.3d 104, which provides that evidence need not be disclosed if the prosecution cannot reasonably anticipate its use. In the present case, however, the prosecution initiated the questioning of Musselman about changing his identity. In our view, the prosecution reasonably should have anticipated — and actually did anticipate — his denial. Therefore, we find Hirtzinger to be distinguishable.
 {¶ 17} In any event, we hold that the error in the State's failure to disclose the *Page 9 
evidence immediately was harmless beyond a reasonable doubt. Musselman contends that his credibility was critical to his defense and that evidence linking him to a phony identification card ruined his credibility. We note, however, that prior to Musselman's testimony the State presented evidence of a driver's license bearing Musselman's picture and the name Richard Dembsky being found in a briefcase he left in his motel room. Thus, if the existence of evidence linking Musselman to false identification ruined his credibility, it was tarnished even before he took the stand. The fact that there were two identification cards bearing Musselman's likeness and another person's name instead of just one adds little to the harm. In addition, the jury heard that evidence about how to change a person's identity was found on a computer disk among Musselman's belongings in his office. Despite this evidence, Musselman insisted during his testimony that he never had tried to change his identity. He maintained this position even after being shown the Indiana state identification card. Moreover, to the extent Musselman's credibility was an issue, it was undermined by a wealth of evidence showing that he had engaged in a pattern of fraud, forged numerous documents, and stolen hundreds of thousands of dollars. Finally, Musselman's credibility was tainted by his refusal to admit on cross examination that an obvious suicide note he sent to his wife was, in fact, a suicide note. In short, having reviewed the record, we are convinced that any violation of Crim. R. 16 by the State was harmless beyond a reasonable doubt. Musselman's second assignment of error is overruled.
 {¶ 18} In his third assignment of error, Musselman asserts that the trial court erred in failing to provide an adequate record of the numerous bench conferences that occurred during trial. In response, the State points out that we previously remanded this case to the *Page 10 
trial court for correction of the record to reflect the content of the bench conferences. In a September 24, 2008 memorandum, Musselman acknowledged that "the issue of the bench conferences has been determined and no new issues were raised by the contents of those conferences * * *." Accordingly, we overrule the third assignment of error as moot.
 {¶ 19} In his fourth assignment of error, Musselman argues that the trial court erred in allowing the State to introduce other-acts evidence against him. This argument concerns the introduction of evidence about Musselman having an extra-marital affair and his possession of the false Indiana identification card. Musselman contends this evidence was not relevant to any issue in the case. Even if the evidence did have some relevance, he claims it was outweighed by its propensity to prejudice him unfairly.
 {¶ 20} Upon review, we find this assignment of error to be unpersuasive. Under Evid. R. 404(B), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence may be admissible for other purposes, some of which are set forth in Evid. R. 404(B). That list is non-exclusive, however, and other-acts evidence generally may be admitted if relevant to show something other than the accused's criminal propensity. State v. Harris, Montgomery App. No. 19311, 2003-Ohio-1046, ¶ 8.
 {¶ 21} In the present case, the State argues that testimony about the extra-marital affair and false identification was admitted to prove Musselman's motive or intent to leave his family, change his identity, and pursue a new life with the substantial sums of money he had obtained through a fraudulent real estate scheme. The record supports the State's argument that the evidence was introduced for permissible purposes. The evidence about an affair cited by Musselman consists of testimony that a woman's belongings were found *Page 11 
in the motel room where he had been staying when he left a suicide note. This evidence supports an inference that Musselman had a female companion with him when he disappeared. As noted above, the State also produced evidence that Musselman had a false Indiana identification card in the name of Kenneth Hagland. This evidence was introduced to refute Musselman's testimony that he had not attempted to change his identity. Moreover, as we pointed out previously, the record reflects that a driver's license bearing Musselman's picture and the name Richard Dembsky was found in the briefcase left at the motel room. This evidence all supports the State's theory that Musselman was planning to start a new life for himself under a new name using the money he had obtained through a fraudulent real estate scheme. We find no abuse of discretion in the trial court's admission of the evidence.
 {¶ 22} Finally, under Evid. R. 403(A), relevant evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, or confusion of the issues, or of misleading the jury." Musselman argues that testimony about a woman's belongings being found in his motel room and his false identification was unfairly prejudicial because it was inflammatory. Having reviewed the evidence at issue, we do not find that it was subject to exclusion under Evid. R. 403(A). The trial court was justified, in the exercise of its broad discretion, in finding the testimony to be more probative than unfairly prejudicial. Accordingly, we find no error in the State's use of the testimony. The fourth assignment of error is overruled.
 {¶ 23} In his fifth assignment of error, Musselman maintains that the trial court erred in convicting him of allied offenses of similar import. In particular, he contends engaging in a pattern or corrupt activity, aggravated theft by deception, forgery, and tampering with *Page 12 
government records are all allied offenses of similar import. He asserts that "there existed only one intent throughout the scheme, defrauding lenders through [his] brokerage company." He further argues that all of the offenses had "similar" elements, particularly "the intent to defraud through falsified documents." In his reply brief, Musselman suggests that all of his offenses should merge into one offense of engaging in a pattern of corrupt activity.
 {¶ 24} Upon review, we find Musselman's argument to be without merit. R.C. 2941.25 provides:
 {¶ 25} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 26} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import pursuant to R.C. 2941.25(B), or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 27} In determining whether two or more offenses constitute allied offenses of similar import under R.C. 2941.25(A), a two-step test is employed. In the first step, the statutorily defined elements of the crimes are compared in the abstract, without reference to the facts of the case or the defendant's conduct constituting the offense. State v.Rance, 85 Ohio St.3d 632, 1999-Ohio-291. If the elements of the offenses correspond to such a degree that commission of one crime will result in commission of the other, the crimes are allied offenses of similar import, and the court must then proceed to the second step. Id. If the elements do not so correspond, the offenses are of dissimilar import, and the court's *Page 13 
inquiry ends. Id. In the second step, the defendant's particular conduct is reviewed to determine whether the defendant can be convicted of both crimes. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. Id.
 {¶ 28} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." State v. Cabrales,118 Ohio St.3d 54, 2008-Ohio-1625, paragraph one of the syllabus, clarifyingRance.
 {¶ 29} In the present case, Musselman was convicted on one count of engaging in a pattern of corrupt activity and multiple counts of aggravated theft by deception, forgery, and tampering with government records.
 {¶ 30} The statute defining the offense of engaging in a pattern of corrupt activity provides:
 {¶ 31} "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity[.]" R.C. 2923.32(A)(1). A "pattern of corrupt activity" requires "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). *Page 14 
"Corrupt activity" includes Musselman's alleged acts of theft, forgery, and record tampering. R.C. 2923.31(I)(2)(c).
 {¶ 32} The theft statute provides:
 {¶ 33} "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * by deception." R.C. 2913.02(A)(3).
 {¶ 34} The forgery statute provides:
 {¶ 35} "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * utter, or possess with purpose to utter, any writing that the person knows to have been forged." R.C. 2913.31(A)(3).
 {¶ 36} The record-tampering statute provides:
 {¶ 37} "No person, knowing the person has no privilege to do so, and with the purpose to defraud or knowing that the person is facilitating a fraud, shall * * * [u]tter any writing or record, knowing it to have been tampered with[.]" R.C. 2913.42(A)(2).
 {¶ 38} As an initial matter, we have no difficulty concluding that theft by deception, forgery, and record tampering are not allied offenses of similar import. Comparing the elements of these offenses in the abstract, it is apparent that commission of one of them will not necessarily result in commission of another. Theft by deception may be committed by obtaining control over the property of another. Neither forgery nor record tampering requires obtaining control over the property of another. Moreover, forgery and record tampering are not allied offenses. Forgery may be committed by possessing with the purpose to utter a forged writing, whereas record tampering requires actually uttering a writing or record that has been tampered with. Moreover, if a person utters a record that *Page 15 
has been tampered with for purposes of a record-tampering conviction, the tampering at issue may be something other than a forgery.[1] Even assuming, arguendo, that forgery and record tampering are allied offenses of similar import, Musselman committed those crimes separately. The record reflects that the forgery and record-tampering convictions all involved different documents. The forgery convictions stemmed from Musselman's role in forging loan applications, appraisals, and settlement statements. The record-tampering convictions arose from his role in having fraudulent property deeds filed with the county recorder. Therefore, Musselman could be convicted separately for these offenses under the second part of the two-part Rance test discussed above.
 {¶ 39} Finally, we reject Musselman's argument that he cannot be convicted separately for engaging in a pattern of corrupt activity and the predicate offenses of theft, forgery, and record tampering. Musselman contends the theft, forgery, and record tampering offenses formed the pattern of corrupt activity needed for his conviction on count one. We note, however, that commission of the offense of engaging in a pattern of corrupt activity will not necessarily result in commission of the offense of theft, forgery, or record tampering. This is so because a conviction for engaging in a pattern of corrupt activity may be based on two or more violations of numerous other criminal statutes. See R.C. 2923.31(I) (identifying a multitude of crimes that qualify as "corrupt activity"). Because a defendant need not engage in theft, forgery, or record tampering to commit the offense of engaging in a pattern of corrupt activity and vice versa, the crimes are not allied offenses of similar import. Cf. State v. Ritchey, 64 Ohio St.3d 353,369, 1992-Ohio-44, abrogated on *Page 16 
other grounds, 80 Ohio St.3d 390, 1997-Ohio-335 (holding that aggravated murder and aggravated arson are not allied offenses of similar import because "[a]ggravated murder requires purposely causing the death of another while committing one of nine specified felonies, of which aggravated arson is only one," and "aggravated arson does not require a purposeful killing"); State v. Grant, 67 Ohio St.3d 465, 475,1993-Ohio-171 (same).
 {¶ 40} Musselman's argument also is foreclosed by Rance, supra. In that case, the Ohio Supreme Court considered whether involuntary manslaughter and aggravated robbery were allied offenses of similar import. In so doing, it endorsed Justice Rehnquist's reasoning in dissent in Whalen v. United States (1980), 445 U.S. 684, wherein he opined that a defendant could be punished for rape and felony murder based on the rape because a person can commit rape without committing felony murder and can commit felony murder without committing rape.Rance, 85 Ohio St.3d at 637. The Rance court rejected the majority view in Whalen that separate sentences could not be imposed because "[a] conviction for a killing in the course of a rape cannot be had without proving all the elements of the offense of rape."[2] Whalen,445 U.S. at 693-694; see also State v. Watson, 154 Ohio App.3d 150, 154,2003-Ohio-4664, ¶ 15 (recognizing Rance's rejection of the majority view in Whalen).
 {¶ 41} In State v. Brown, Montgomery App. No. 18643, 2002-Ohio-277, we relied on Rance to find that aggravated arson and felony murder based on aggravated arson are not *Page 17 
allied offenses of similar import. We reasoned that "[a]ggravated arson can be committed without a killing, and felony murder can be committed by means of a first or second degree felony other than aggravated arson." We see no principled basis for reaching a different result here. Engaging in a pattern of corrupt activity certainly can be committed without theft, forgery, or record tampering, and each of those crimes can be committed without engaging in a pattern of corrupt activity. Therefore, based on the reasoning and legal authority set forth above, we are compelled to find that Musselman could be convicted and sentenced for engaging in a pattern of corrupt activity and the underlying offenses of theft, forgery, and record tampering. His fifth assignment of error is overruled.
 {¶ 42} In his sixth assignment of error, Musselman contends counts one and three through forty-eight of his indictment were defective underState v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, because they failed to include a mens rea element. He also asserts that this defect is structural in nature, requiring reversal of his convictions.
 {¶ 43} In response, the State asserts that count one, which charged Musselman with engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), is a strict-liability offense that need not allege a culpable mental state. With regard to counts three through thirty-six, which charged forgery in violation of R.C. 2913.31(A)(3), the State contends they included the requisite mens rea element. Likewise, concerning counts thirty-seven through forty-eight, which alleged tampering with government records in violation of R.C. 2913.42, the State maintains that they set forth the required mental state. Musselman's only rejoinder to the State's argument is that R.C. 2923.32(A)(1) is unconstitutional on its face insofar as it imposes strict liability.
 {¶ 44} Upon review, we find no merit in Musselman's sixth assignment of error and *Page 18 
no violation of Colon. Turning first to counts three through forty-eight of Musselman's indictment, which charged him with forgery and record tampering, we agree with the State that his indictment included the required mental state. Counts three through thirty-six charged Musselman with forgery in violation of R.C. 2913.31(A)(3). The indictment tracked the language of the statute, and each count alleged that Musselman, "with purpose to defraud, or knowing that he was facilitating a fraud, did utter, or possess with purpose to utter, any writing * * * which he knew to have been forged." Thus, the forgery counts alleged the proper culpable mental state.
 {¶ 45} Counts thirty-seven through forty-eight charged Musselman with record tampering in violation of R.C. 2913.42(A)(2). Again, the indictment followed the language of the statute, and each count alleged that Musselman, "knowing that he had no privilege to do so, and with purpose to defraud or knowing that he was facilitating a fraud, did utter a writing or record * * * knowing it had been tampered with[.]" As a result, the record-tampering counts also alleged the proper mental state.
 {¶ 46} With regard to count one, which charged Musselman with engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), he is correct that it failed to include any mens rea element. Count one alleged that Musselman and co-defendant Mark Edwards, "while associated with an enterprise, to-wit: Phoenix Funding, a mortgage broker business, did conduct or participate in, directly or indirectly, the affairs of said enterprise through a pattern of corrupt activity[.]"
 {¶ 47} Musselman cites Colon, supra, for the proposition that recklessness is the applicable mens rea element when a non-strict-liability criminal statute fails to mention any degree of culpability. Musselman also relies on Colon to support his claim that omission of *Page 19 
a required mens rea element of recklessness from an indictment renders the indictment fatally defective and constitutes a structural error mandating a finding of per se prejudice.
 {¶ 48} Although we do not dispute Musselman's reading ofColon, [3] the argument he raises under his assignment of error presumes that engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1) is not a strict-liability offense. In fact, the crime is a strict liability offense, and the accused's mental state is irrelevant. State v. Schlosser, 79 Ohio St.3d 329, 335, 1998-Ohio-716. Therefore, the omission of a culpable mental state from Musselman's indictment was not error at all.
 {¶ 49} Apparently recognizing that Schlosser forecloses hisColon argument, Musselman argues for the first time in a supplemental reply brief that R.C. 2923.32(A)(1) is unconstitutional on its face insofar as it imposes strict liability. Although he did not raise this issue in the trial court, Musselman notes that we retain the discretion to address constitutional issues raised for the first time on appeal.State v. Chappel (2008), 175 Ohio App.3d 658, 662, 2008-Ohio-1157.
 {¶ 50} In the present case, however, Musselman failed to raise his argument regarding the constitutionality of R.C. 2923.32(A)(1) as an assignment of error on appeal. Instead, he presumed, incorrectly, that the statute did not impose strict liability and assigned as error aColon violation. Only after discovering the futility of that position did he attempt to raise his constitutional argument in a supplemental reply brief. It is well settled that a party may not raise new issues or arguments for the first time in a reply brief. State v. Harris, Champaign App. No. 07-CA-32, 2008-Ohio-5165, ¶ 18. Accordingly, we decline to *Page 20 
address Musselman's assertion that R.C. 2923.32(A)(1) is unconstitutional. His sixth assignment of error is overruled.
 {¶ 51} In his seventh assignment of error, Musselman claims the failure to include a mens rea element in his indictment, as alleged in his sixth assignment of error, "permeated the entire indictment and trial," requiring the indictment to be declared void. Based on the analysis set forth above, however, we conclude that Musselman's indictment contained all required mens rea elements. Accordingly, his seventh assignment of error is overruled.
 {¶ 52} Having overruled each of Musselman's assignments of error, we hereby affirm the judgment of the Montgomery County Common Pleas Court.
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
Mathias H. Heck, Jr. R. Lynn Nothstine Jon Paul Rion Hon. Frances E. McGee
[1] Tampering with a record includes falsifying, destroying, removing, concealing, altering, defacing, or mutilating it. R.C. 2913.42(A)(1) and (2).
[2] The Rance court was able to reject the majority position inWhalen based on its interpretation of R.C. 2941.25, Ohio's multiple-count statute, "because a state legislature `may prescribe the imposition of cumulative punishments for crimes that constitute the same offense under Blockburger without violating the federal protection against double jeopardy * * *.'" State v. Zima, 102 Ohio St.3d 61, 68
n. 3, 2004-Ohio-1807, quoting Rance, 85 Ohio St.3d at 635.
[3] But see State v. Colon, 119 Ohio St.3d 204, 205, 2008-Ohio-3749
(limiting Colon to its facts on reconsideration). *Page 1