[Cite as *State v. Rieske*, 2014-Ohio-3643.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                                :

    Plaintiff-Appellee                      :          C.A. CASE NO.   2013 CA 92

v.                                           :          T.C. NO.   13CR297

SHAUN A. RIESKE                              :       (Criminal appeal from
                                      Common Pleas Court)

    Defendant-Appellant                     :

                                             :

. . . . . . . . . .

**O P I N I O N**

Rendered on the     22nd     day of      August     , 2014.

. . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Assistant Prosecuting Attorney, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. No. 0067020 and NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, 130 W. Second Street, Suite 2150, P. O. Box 1262, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    Defendant-appellant Shaun A. Rieske appeals from his conviction and

sentence for one count of felonious assault (deadly weapon), in violation of R.C. 2903.11(A)(2), a felony of the second degree. Rieske filed a timely notice of appeal with this Court on October 28, 2013.

{¶ 2} The incident which forms the basis for the instant appeal occurred at approximately 4:30 a.m. on April 11, 2013, when the victim, Jason Lisch, was attacked just outside his home by an individual wielding a baseball bat. At the time of the attack, Lisch resided at 431 Selma Road in Clark County, Ohio. Lisch testified that while he was letting his dog out, a male wearing a black hoodie and blue jeans approached him and struck him several times with a baseball bat. The assailant struck Lisch on his arms, legs, and ribs. Lisch testified that he observed one-half of his assailant's face during the attack and was able to identify his attacker as Rieske. Lisch further testified that he had a history with Rieske. Rieske was friends with the ex-boyfriend of Lisch's girlfriend, Daniel Blair. Lisch believed that Daniel Blair had sent Rieske to attack him.

{¶ 3} After the attack was over, Rieske ran away. Lisch got up and went inside his house and called 911. When the police arrived, Lisch identified his attacker as Rieske and provided a description of him. Rieske was arrested for felonious assault at his mother's house after he got off work later that day.

{¶ 4} On April 29, 2013, Rieske was indicted for one count of felonious assault. At his arraignment on May 8, 2013, Rieske pled not guilty to the charged offense. The case proceeded to jury trial on September 11, 2013, and Rieske was ultimately found guilty of felonious assault with a deadly weapon. At the sentencing hearing, the trial court ordered Rieske to serve two years in prison, but stayed execution of his sentence pending the

outcome of the instant appeal.

{¶ 5} It is from this judgment that Rieske now appeals.

{¶ 6} Rieske's first assignment of error is as follows:

{¶ 7} "THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING THE STATE TO CALL AN IMPEACHMENT WITNESS, AND PRESENT IMPEACHMENT DOCUMENTARY EVIDENCE, DESPITE THAT THE EVIDENCE WAS NOT DISCLOSED TO DEFENSE COUNSEL UNTIL THE WITNESS WAS CALLED TO TESTIFY AT TRIAL."

{¶ 8} In his first assignment, Rieske contends that the trial court erred when it allowed the State to impeach him with evidence that had not been disclosed prior to trial. Specifically, Rieske argues that the trial court abused its discretion when it permitted the State to introduce documentary evidence and rebuttal testimony from the intake officer at the Clark County Jail without first disclosing this evidence during discovery in violation of Crim. R. 16. The evidence that the State introduced over the objection from defense counsel established that Rieske was wearing a black hoodie when he was arrested and taken into custody. As previously stated, Lisch testified that Rieske was wearing a black hoodie during the attack.

{¶ 9} Crim.R. 16 governs discovery in criminal prosecutions. By its terms, the purpose of Crim.R. 16 is "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). The Ohio Supreme Court has stated that the overall

objective of the discovery rules is "'is to remove the element of gamesmanship from a trial'" and "to prevent surprise and the secreting of evidence favorable to one party." *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987), quoting *State v. Howard*, 56 Ohio St.2d 328, 333, 383 N.E.2d 912 (1978).

**{¶ 10}** Once discovery is initiated by demand of the defendant, the prosecutor is required to copy or photograph certain "items related to the particular case indictment, information, or complaint, and which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provisions of this rule," as identified in Crim.R. 16(B). These items include "laboratory or hospital reports, books, papers, documents, photographs, tangible objects, buildings, or places." Crim.R. 16(B)(3). The parties have a continuing duty to supplement their disclosures. Crim.R. 16(A).

**{¶ 11}** "Sanctions for a Crim.R. 16 discovery violation are within the discretion of the trial court and should be imposed equally, without regard to the status of the offending party." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 20. "A trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Lakewood* at paragraph two of the syllabus. The Supreme Court has identified three factors that a trial court should consider in exercising that discretion when the discovery violation is committed by the State: (1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether

foreknowledge of the undisclosed material would have benefitted the accused in the preparation of a defense, and (3) whether the accused was prejudiced. *Darmond* at ¶ 35, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983).

{¶ 12}   As the Supreme Court of Ohio determined:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable.  (Internal citation omitted).  It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision.  It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 13}  Rieske chose to testify in his own defense at trial.   During his cross-examination, Rieske denied that he was wearing a black hoodie when he was arrested for attacking Lisch.   The following exchange occurred between the State and Rieske:

The State: When you were arrested, you were wearing a black hoodie, weren't you?

Rieske: No.

Q: Are you sure about this?

A: Yes, sir.

\*\*\*

Q: You understand at the jail they list what you come in with, don't they?

A: I'm sure they do, yes.

Q: *Still gonna go with you weren't in a black hoodie when they arrested you?*

A: *I was not in a black hoodie when they arrested me, no.*

After Rieske finished testifying, defense counsel requested that a short conference be held outside the hearing of the jury. The trial court granted defense counsel's request, and the jury was removed from the courtroom. At that point, the following exchange occurred between the State, defense counsel, and the trial court:

The Court: Court is back on record [in] 13-CR-0297, State versus Shaun Rieske. The Court has been informed that the State plans on calling a rebuttal witness. [Defense Counsel], you asked to put something on the record before that was done.

Defense Counsel: That's correct, Your Honor. I've received a three-page document from the prosecutor that called "Inmate Property Received." Documents that I've not received in discovery. I presume that the purpose of this document and the witness who was also not disclosed is to show that Mr. Rieske had a black zip-up hoodie when he was booked in the jail. This is not rebuttal material. This is case in chief sort of material that I

should have had.

The Court: State wish to respond?

The State: Yes, Your Honor. I first became aware late Monday afternoon that [Rieske] may have been arrested in a black hoodie. I didn't get a chance to check that out Monday. I did make a phone call yesterday; and I can't tell you what time it was. I talked to the command center person. They quickly looked it up on the computer and it was, in fact, the case that Mr. Rieske was arrested in a black zip-up hoodie, white shirt, and jeans. *I did not disclose that to the Defense. I fully assumed that the Defendant would own up to that*; *but he didn't*. Only when he testified, and I wasn't even certain he was gonna testify, did it become apparent to me that that was gonna be a rebuttal issue. What I had prepared for rebuttal, up until today, was the possibility of putting [Springfield Police Officer] Paul Herald back on the stand, depending on who took the witness stand. And since Jerry Blair did not take the witness stand, I sent Paul Herald home or asked him to stay until I had decided. So today is when I scrambled to get [Springfield Police Intake-Officer] Mr. Gonzalez available if I needed him.

The Court: I'm going to allow the rebuttal testimony. I'll have the jury brought back in. Is your witness here?

The State: He's outside. Judge, to be – I think this will go correctly; but I also have the jail custodian of records here, Angie Lyons, in case I want to put the actual records in.

Defense Counsel: Well, again, just for the record, the fact that the prosecutor learned of it before the trial starts is even more reason to keep it out now. This is not rebuttal material. He was aware of it before we started this morning, and so I just renew my objection.

The Court: So noted.

{¶ 14} The State argues that Officer Gonzalez was a rebuttal witness since there was cross-examination of Rieske by the prosecutor questioning whether he was wearing a black hoodie when he was arrested. "Rebuttal evidence is that which is given 'to explain, refute, or disprove new facts introduced by the adverse party.'" *State v. Wright*, 1st Dist. Hamilton No. C-080437, 2009-Ohio-5474, at ¶56, citing *State v. McNeill*, 83 Ohio St.3d 438, 446, 1998-Ohio-293, 700 N.E.2d 596. Lisch testified that at the time of the attack, Rieske was wearing a black hoodie. We recognize that the State could have offered Officer Gonzalez's testimony regarding the black hoodie in its case in chief in order to bolster Lisch's identification of Rieske, since he described his assailant as wearing a black hoodie. However, the State was not required to do so. Although Rieske's arrest was the same day, it occurred several hours after the assault, ample time to change his clothes. We also recognize the general rule that "[e]vidence admissible in the prosecution's case-in-chief *** [cannot] be reserved for rebuttal to avoid the [discovery/disclosure] rule." *State v. Musselman*, 2d Dist. Montgomery No. 22210, 2009-Ohio-424, at 13 (internal citations omitted). In our view, however, this is not what occurred here since the evidence was adduced to impeach Rieske's credibility regarding his contention that he was not wearing a black hoodie at the time of the arrest.

{¶ 15} "The criterion for determining whether the State should have provided the

name of a witness called for rebuttal is whether the State reasonably should have anticipated that it was likely to call the witness, whether during its case in chief or in rebuttal." *State v. Lorraine*, 66 Ohio St.3d 414, 423, 613 N.E.2d 212 (1993), citing *State v. Howard,* 56 Ohio St.2d 328, 333, 383 N.E.2d 912 (1978); see also *State v. Bowshier*, 2d Dist. Clark No. 2008 CA 101, 2009-Ohio-6387. In the instant case, the State asserted that it became aware on Monday, September 9, 2013, two days before the trial began, that Rieske was wearing a black hoodie when he was arrested. Obviously, the State could not predict whether Rieske would testify at trial, and it certainly had no reason to believe that he would deny that he was arrested in a black hoodie on the day of the attack. The State contended that it "assumed that the Defendant would own up to" wearing a black hoodie at the time he was arrested. Only after Rieske testified that he was not wearing a black hoodie when he was arrested did the State move the trial court to allow Officer Gonzalez to testify for impeachment purposes.

{¶ 16} The question, therefore, is not whether the State should have disclosed this witness and the intake documentation prior to trial, but rather whether the court abused its discretion in permitting Officer Gonzalez to testify. *Bowshier,* at ¶ 70. Here, the court accepted the prosecutor's explanation and there is no evidence of bad faith.

{¶ 17} We note that it is difficult to ascertain how foreknowledge of Officer Gonzalez's testimony and the intake document would have benefitted Rieske in the preparation of his alibi defense. At the time the evidence was admitted and Officer Gonzalez permitted to testify, Rieske could have made a motion for a continuance, but failed to do so. Although under the circumstances herein, no continuance would have been

warranted, as the testimony cannot be characterized as a surprise. Rieske's defense at trial was that he was at his boss' house all night and did not travel to Lisch's house and attack him. Rieske's alibi is not contradicted by Officer Gonzalez's testimony or the information contained in the intake sheet. Officer Gonzalez's testimony was limited to the fact that Rieske was wearing a black hoodie when he was arrested and booked for the attack on Lisch. Neither Officer Gonzalez's testimony nor the intake sheet had any detrimental effect on the viability of Rieske's alibi. Significantly, Rieske cannot claim surprise as he, more than anyone, should have known the fact that he was arrested in a black hoodie.

{¶ 18} "'The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party.' *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 3. In other words, a primary goal is to prevent gamesmanship. *State v. Howard* (1978), 56 Ohio St.2d 328, 333. The overall purpose of the discovery rules, however, is to produce a fair trial. *Papdelis*, 32 Ohio St.3d at 3. Counsel should make every effort to anticipate the evidence that will be needed at trial and obtain it in a timely manner." *Bowshier*, at ¶ 72. Here we cannot conclude that there was gamesmanship nor surprise. Accordingly, we do not find any discovery infraction in the rebuttal use of the intake sheet and Officer Gonzalez's testimony. Rieske was not denied a fair trial, and the trial court did not abuse its discretion.

{¶ 19} Rieske's first assignment of error is overruled.

{¶ 20} Rieske's second assignment of error is as follows:

{¶ 21} "TRIAL COURT IMPROPERLY ADMITTED EVIDENCE OF APPELLANT'S CONVICTION FOR UNAUTHORIZED USE OF A MOTOR VEHICLE

FOR IMPEACHMENT PURPOSES."

{¶ 22} In his second assignment, Rieske argues that the trial court erred when it permitted the State to introduce evidence of his prior misdemeanor conviction for unauthorized use of a motor vehicle, in violation of R.C. 2913.03. Specifically, Rieske asserts that this offense is not a crime of dishonesty, and therefore was not admissible for impeachment purposes.

{¶ 23} Evid. R. 609 states in pertinent part:

(A) For the purpose of attacking the credibility of a witness:

***

(3) notwithstanding Evid. R. 403(A), but subject to Evid. R. 403(B), evidence that any witness, including an accused, having been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance.

(B) Time Limit

Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction *** .

{¶ 24} Evid. R. 609 must be read in conjunction with Evid. R. 403(B), which states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

{¶ 25} Under Evid. R. 609, a trial court has broad discretion to determine the extent

of the admissibility of prior convictions for impeachment purposes. *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, at ¶ 27.  In determining whether prior convictions should be admitted or whether the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues or of misleading the jury, the trial court should consider the following factors: _(1) the nature of the crime, (2) recency of the prior conviction, (3) similarity between the crime for which there was a prior conviction and the crime charged, (4) importance of the defendant's testimony, and (5) centrality of the credibility issue._ *State v. Goney*, 87 Ohio App.3d 497, 622 N.E.2d 688 (2d Dist.1993).

{¶ 26}  During the State's cross-examination of Rieske, the following exchange occurred:

The State: How about 2008?  Were you convicted of unauthorized use of a motor vehicle?

Defense Counsel: I object.  That's not an impeachable offense.

The State: Listed as a theft offense in the Revised Code.

The Court: Overruled.

Rieske: I do not recall.  I mean it's been a long time ago.  I don't recollect.

Defense Counsel: I would make an objection, Your Honor.  It's not – it's a misdemeanor.  It's not a crime of dishonesty.

The Court: Approach the bench, please.

***

(Bench conference held out of the hearing of the jury)

***

The Court: Unauthorized use of a motor vehicle is a misdemeanor. It is, however, a theft offense; and from the date I'm told, this has occurred within ten years. So it is admissible. Do you have any documentation regarding it?

The State: I didn't pull it. I thought he would admit to it, but I looked it up in municipal court.

Defense Counsel: It's not a crime of dishonesty.

The Court: It's a theft offense which, by definition, is a crime of dishonesty or goes toward veracity; but it is admissible.

Defense Counsel: Well, I disagree. So.......

The Court: You will have more opportunities. Thank you, gentlemen.

***

(Bench conference concluded)

***

The Court: Continue, please.

***

The State: What's your social security number?

Rieske: ***-**-****.

Q: Date of birth?

A: 06/23/1986.

Q: Full name?

A: Shaun Andrew Rieske.

Q: Now, in 2008 are you saying you do not have that conviction or you just don't

recall?

Defense Counsel: Object.

The Court: Overruled.

Rieske: I do not recall.[1]

**{¶ 27}** R.C. 2913.01(K)(1) defines unauthorized use of a motor vehicle, under R.C. 2913.03, as a theft offense. "Under Ohio law, 'dishonesty' * * * has been interpreted to include theft." *State v. Carlisle*, 2d Dist. Montgomery No. 13901, 1994 WL 645989 (November 16, 1994). Thus, evidence of Rieske's 2008 conviction for unauthorized use of a motor vehicle was admissible under Evid. R. 609(A)(3) for the purpose of attacking his credibility. *State v. Murley*, 2d Dist. Champaign No. 08-CA-26, 2009-Ohio-6393, at ¶ 8. Evidence of a crime that involves dishonesty is admissible for such a purpose, and theft is such a crime. *Id.*

**{¶ 28}** We also note that in its final instructions, the trial court properly restricted the jury's use of the prior-conviction evidence to considerations of the weight and credibility they ought to give Rieske's testimony. Specifically, the trial court gave the following instruction to the jury:

Testimony was introduced that the Defendant was convicted of a prior

criminal act. This testimony may be considered for the purpose of helping

---

[1] Although the State failed to introduce a certified copy of the judgment of conviction against Rieske for unauthorized use of a motor vehicle, we note that his PSI contains information which establishes that on July 14, 2008, he was convicted of said offense in Case No. 08 CRB 2856. The better practice would be for the State to have obtained a certified copy of the judgment entry of conviction for use at trial for impeachment purposes.

you to test the credibility or weight to be given his testimony. It cannot be considered for any other purpose.

{¶ 29} In rejecting a defendant's argument that the prosecutor improperly used prior-conviction evidence, we have previously found that "[the] instruction ensured that the jury would use the prior convictions solely for testing the credibility of the witness, which is an acceptable use under Evid.R. 609." *Murley,* at ¶ 21, citing *State v. Owings,* 2d Dist. Montgomery No. 21429, 2006-Ohio-4281 at ¶77. "The jury," we said, "is presumed to follow instructions it is given." *Id.* Accordingly, we find that the trial court did not abuse its discretion when it permitted the State to introduce evidence of Rieske's prior misdemeanor conviction for unauthorized use of a motor vehicle, in violation of R.C. 2913.03.

{¶ 30} Rieske's second assignment of error is overruled.

{¶ 31} Rieske's third assignment of error is as follows:

{¶ 32} "THE EVIDENCE DID NOT SUPPORT A CONVICTION FOR FELONIOUS ASSAULT."

{¶ 33} In his third assignment, Rieske argues that the trial court erred when it overruled his Crim. R. 29 motion for acquittal. Rieske also asserts that the jury verdict finding him guilty of felonious assault was against the manifest weight of the evidence.

{¶ 34} Crim. R. 29(A) states that a court shall order an entry of judgment of acquittal if the evidence is insufficient to sustain a conviction for the charged offense. "Reviewing the denial of a Crim. R. 29 motion therefore requires an appellate court to use the same standard as is used to review a sufficiency of the evidence claim." *State v. Witcher*, 6th Dist. Lucas No. L-06-1039, 2007-Ohio-3960. "In reviewing a claim of insufficient

evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " (Citations omitted). *State v. Crowley*, 2d Dist. Clark No. 2007 CA 99, 2008-Ohio-4636, ¶ 12.

**{¶ 35}** "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Cassell*, 2d Dist. Clark No. 09CA0064, 2011-Ohio-23, ¶ 46. When a conviction is challenged on appeal as being against the manifest weight of the evidence, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 36}** In the instant case, the State was required to prove each and every element of felonious assault with a deadly weapon, pursuant to R.C. 2903.11(A)(2), which states in pertinent part:

(A) No person shall knowingly: (2) [c]ause or attempt to cause physical harm to another *** by means of a deadly weapon ***.

**{¶ 37}** R.C. 2901.22(B) defines "knowingly" as follows:

A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a

certain nature.

{¶ 38}   "Deadly weapon" is defined in R.C. 2923.11(A) as follows:

Deadly weapon means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.

{¶ 39}   Initially, we note that Rieske contends that there was insufficient evidence to convict him of felonious assault, and his Crim. R. 29 motion for acquittal should have been granted.  The argument in Rieske's third assignment, however, almost exclusively focuses on his contention that his conviction was against the manifest weight of the evidence. Specifically, Rieske presented an alibi defense at trial wherein he attempted to establish that he did not have any contact with Lisch on the morning of April 11, 2013.  In fact, Rieske adduced evidence through his own testimony and that of his employer's wife, Susan Blair, that he spent the night at his employer's residence.  Blair testified that when she fell asleep on the sofa between 11:00 p.m. and 12:00 a.m., Rieske was at her house playing video games with her husband and brother.  The brother is the ex-boyfriend of Lisch's girlfriend. Blair testified that when she woke up that morning between 5:30 a.m. and 6:00 a.m., Rieske was still present at her house.  However, Lisch testified that Rieske attacked him with a baseball bat at approximately 4:30 a.m. outside of his house while he was letting his dog out.  Thus, at the time of the attack, Blair would have been asleep and unable to account for Rieske's whereabouts.

{¶ 40}   Blair further testified that her home is equipped with an alarm system, and it would have to have been turned off if somebody left the house.   Blair also testified that even

though Rieske sleeps over at her house often, he does not know the code to alarm system. Nevertheless, no evidence was adduced at trial that the alarm system had, in fact, been activated during the period of time in question. Rieske testified that he did not have a driver's license, and it would have been impossible for him to have walked to Lisch's house and back prior to Blair waking up at 5:30 a.m. However, simply because someone does not have a driver's license does not mean that the person cannot drive a motor vehicle.

{¶ 41} More importantly, Lisch unequivocally testified that Rieske was the individual who attacked him with a baseball bat outside of his house at 4:30 a.m. Any disparity in his description of the height and weight of assailant and Reiske's is minimal. Lisch testified that Rieske hit him several times with the bat and then ran away. This conduct constitutes felonious assault. Thus, a review of the record convinces us that the State's evidence, taken in its entirety, was sufficient to sustain Rieske's conviction for felonious assault with a deadly weapon. Additionally, Lisch's testimony alone was sufficient to overrule a Crim. R. 29 motion.

{¶ 42} Furthermore, Rieske's conviction is not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony were matters for the court to resolve. Although Rieske testified on his own behalf and provided an alibi for his whereabouts on the morning of April 11, 2013, it was up to the jury to determine whose testimony to credit. Accordingly, the jury did not lose its way simply because it chose to believe the evidence provided by the State's witnesses, including Lisch's own testimony. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred.

{¶ 43} Rieske's third assignment of error is overruled.

{¶ 44} Rieske's fourth and final assignment of error is as follows:

{¶ 45} "THE CUMULATIVE EFFECT OF THE ERRORS DEPRIVED APPELLANT OF HIS DUE PROCESS RIGHTS AND RIGHT TO A FAIR TRIAL."

{¶ 46} In regards to Rieske's cumulative error argument, "separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52. In order to find 'cumulative error' present, we must first find that multiple errors were committed at trial. *Id*. at 398, 721 N.E.2d 52. We must then find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. *State v. Thomas*, Clark App. No. 2000-CA-43, 2001-Ohio-1353." *State v. Kelly*, 2d Dist. Greene No. 2004-CA-20, 2005-Ohio-305, ¶ 33. "Where no individual, prejudicial error has been shown, there can be no cumulative error. *State v. Blankenship* (1995), 102 Ohio App.3d 534, 557, 657 N.E.2d 559." *State v. Jones*, 2d Dist. Montgomery No. 20349, 2005-Ohio-1208, ¶ 66.

{¶ 47} In light of our foregoing analysis, we find that Rieske has failed to establish that any errors occurred in the instant case. *State v. Moreland*, 50 Ohio St.3d 58, 69, 552 N.E.2d 894, 905 (1990). Thus, we fail to see how the absence of error can constitute cumulative error. *Id*.

{¶ 48} Rieske's fourth and final assignment of error is overruled.

{¶ 49} All of Rieske's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, P.J., concurring:

## I. Jail Records Testimony

{¶ 50}   The evidence regarding what Rieske was wearing when admitted to the jail not only attacked his credibility; it also was substantive evidence that he was wearing the same clothing as the assailant was described as wearing.  The State was aware of this inculpatory evidence before the trial, but did not inform the defendant.  Rather, when Rieske testified, it used the evidence both substantively and to imply that he lied about his clothing so he probably lied about his alibi as well.

{¶ 51}   The jail records, in this situation, constituted "reports from peace officers" in Crim.R.16(B)(6) and should have been disclosed prior to trial.  For example, in *State v. Davis*, 10th Franklin Dist. No. 08AP-443, 2009-Ohio-1375, the trial court admitted the testimony of the county jail record keeper and jail visitation records that had not been provided to the defendant before trial.  The parties and the court agreed that the record keeper's name and the documents were subject to Crim. R. 16.  *Id*. ¶ 24.  The question was whether the court appropriately resolved the prosecution's failure to comply with the requirement.

{¶ 52}   Citing *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, at ¶ 131, the appellate court held that to be reversible error, the violation must be willful and prejudicial to the defense, and that the disclosure prior to trial would have aided the accused's defense.  *Davis,* ¶ 25.

{¶ 53}   Rieske knew what he was wearing when arrested, and has not shown how advanced disclosure would have aided his defense.  Hypothetically, he could argue that he would not have taken the stand, but he was making an alibi defense; or   (as suggested at oral

argument) that he would have been more explicit in a description of what he was wearing (which he could have done on redirect). The trial court's resolution of this issue did not constitute error.

## II. Prior Conviction Testimony

{¶ 54} There is nothing on the record that demonstrates the defendant was ever convicted of unauthorized use of a vehicle.

{¶ 55} Rieske said he could not recall such a 2008 conviction; the prosecutor then adduced the defendant's date of birth and social security number, but never attempted to tie this identifying information to any conviction. That is until closing argument when the prosecutor argued, "He can't even remember whether he's been convicted of a certain crime or not, but this Judge is gonna tell you that theft offense that he owned up to, he remembers that one and you can use that to determine his credibility."

{¶ 56} The defendant, on direct, acknowledged that he had a shoplifting conviction from Wal-Mart, but the prosecutor's argument inferred to the jury that it could speculate that there was at least one additional conviction, when there is nothing on the record that demonstrates the defendant was ever convicted of unauthorized use of a motor vehicle or any other offense.

{¶ 57} Crim.R. 16(B)(2) requires that the prosecutor provide a copy of any criminal record of the defendant. We cannot tell from the record on appeal whether this was provided and perhaps trial counsel did not bring it out at the same time as the shoplifting charge because counsel believed the unauthorized use charge was otherwise not usable for impeachment.

{¶ 58} Given that there was a prior theft conviction and there was no objection to the court's instructions, I agree that this assignment is controlled by Evid.R. 609(A)(3) and 403(B) and is not well taken. The remarks of the prosecutor, if error, were harmless beyond a reasonable doubt.

. . . . . . . . . .

HALL, J., concurring:

{¶ 59} I agree with the reasoning, analysis and result of the majority opinion. I disagree with paragraph 51 of Judge Froelich's concurring opinion and write separately to explain so that silence will not be construed to be acquiescence.

{¶ 60} The assailant in this felonious assault was described as wearing a black hoodie. The record reflects that trial began on Wednesday September 11, 2013. On Monday afternoon, September 9th, the prosecutor learned that the defendant "may have been arrested in a black hoodie." (T. ____) "I didn't get a chance to check that out Monday. I did make a phone call yesterday [Tuesday September 10th] * * * * They quickly looked it up on the computer and it was, in fact, the case that Mr. Rieske was arrested in a black zip-up hoodie * * * *" Id. The State did not introduce the fact that Rieske was arrested in a black hoodie in their case in chief. They also did not introduce this fact during the defense case either because when the defendant testified, and the State asked him whether he was arrested wearing a black hoodie, he specifically denied he was wearing a black hoodie when arrested. It was thereafter, upon rebuttal, that the State requested, and was allowed, to introduce the evidence from jail booking records that the defendant was booked into jail wearing a black hoodie.

{¶ 61} The result in this case hinges upon the determination that the trial court's

allowance of the introduction of the jail booking records did not constitute reversible error, either because it was 1) not an abuse of discretion (lead opinion in which I join) or 2) that the prosecutor's action was not willful or prejudicial to the defendant (concurring opinion, a point upon which I agree). Neither of those conclusions requires a determination that the jail booking records constitute "reports from peace officers" as indicated in paragraph 51 of the concurring opinion. Moreover, I conclude that routine records maintained by a jail are NOT "reports from peace officers" as contemplated by Crim. R. 16. Initially, I do not believe that a non-deputy jail employee is a "peace officer." *See, e.g.*, R.C. 109.71(A) or 2935.01(B). Furthermore, in my view "reports from peace officers" is intended to encompass arrest, incident, accident or investigative type reports typically produced to document those events and often containing a narrative description of the officer's activities. Booking records of a jail, or records of who an inmate has for visitors, or what phone numbers they call, are not "reports from peace officers." Those records may qualify as "documents" required to be provided to the defendant by Crim. R. 16(B) if "intended for use by the prosecuting attorney as evidence at the trial," but they are records, not reports.

{¶ 62} Finally, in evaluating whether the trial court's admission of the jail booking records in this case was an abuse of discretion I would emphasize that a trial is often described as a search for the truth. In this case, when it became apparent that the defendant lied about a relevant fact, it was abundantly reasonable to allow introduction of previously un-exchanged documentary evidence directly contrary to his fabrication.

. . . . . . . . . .

Copies mailed to:

Ryan A. Saunders
Jon Paul Rion
Nicole Rutter-Hirth
Hon. Richard J. O'Neill