DECISION.
{¶ 1} Defendant-appellant Billy Jack Earls was charged with two counts of felonious assault[1] and two counts of assault[2] after a fight among neighbors in Clifton Heights. After a bench trial, the trial court granted Earls's Crim.R. 29 motion for acquittal on the two assault charges. But the trial court found Earls guilty of both counts of felonious assault and sentenced him to eight years in prison.
 {¶ 2} Earls now appeals and alleges that (1) the trial court was biased and erred in denying his mistrial motions; (2) the conviction was against the manifest weight of the evidence; (3) he was denied the right to confront a witness; and (4) the imposition of the maximum sentence violated Blakely v.Washington.[3]
 {¶ 3} The proper vehicle to allege judicial bias is filing an affidavit with the Ohio Supreme Court. And the findings of guilt were not against the weight of the evidence. Nor was Earls denied the right to confront witnesses — he was only limited for asking repetitive questions. But because of the Ohio Supreme Court's decision in State v. Foster,[4] we vacate his sentences and remand for resentencing.
 I. A Drunken Brawl {¶ 4} University of Cincinnati student Noah Berkheimer and his roommates, Kevin Maxfield and Ryan Washington, hosted a party at their off-campus house. The party started sometime between 9:00 and 10:00 p.m. and continued for several hours. At the height of the party, there were somewhere between 50 to 90 attendees.
 {¶ 5} Earls and his mother, brother, girlfriend, and newborn child lived directly across the street from Berkheimer. Earls testified at trial that, sometime around 3:00 a.m., his girlfriend, Danielle Marcum, had become upset that the noise was bothering the baby. She crossed the street and asked the partygoers to turn the music down. Marcum claimed that when she had asked them to turn it down, an "Arab-looking man" had come off the porch, had cursed at her, and had punched her in the eye. When she returned with a black eye, Earls ran out into the street and started yelling at the crowd. Earls testified that a group of men had then chased him up the street.
 {¶ 6} Marcum stated that she had run back inside and had yelled for Earls's brother, JoJo, and his friend John McComas to come out and help. JoJo claimed that when he had reached the middle of the street, four men approached him. JoJo warned them that "if they took another step," he would start fighting. When Kevin Maxfield took another step, JoJo punched Maxfield in the head twice, knocking him to the ground. JoJo was then subdued by the other men.
 {¶ 7} Earls argued that his involvement in the melee had ended there, and that he was not responsible for anyone's injuries.
 {¶ 8} Berkheimer and his roommates testified to a slightly different set of events, which the trial court deemed more credible. Berkheimer stated that, during the party, he had noticed Earls standing on the front porch and offering to sell drugs to the partygoers. When he told Earls to leave, Earls crossed the street, grabbed a rake, returned to the middle of the street, and challenged Berkheimer to come down.
 {¶ 9} Berkheimer stated that he had left the house to make sure that no one got into a fight. As he walked down to the street, his roommate Maxfield preceded him and exchanged words with JoJo. Maxfield was punched in the face twice by JoJo and fell down bleeding. Berkheimer and Washington helped Maxfield stand up. As they were walking him back across the street to their house, Berkheimer was hit in the back of the head with an object that was either a rake handle or a pipe. Berkheimer did not see who hit him, but Washington testified he was "100% certain" that it was Earls who had hit Berkheimer.
 {¶ 10} Berkheimer was taken to the emergency room, and he spent five days in intensive care. He suffered two skull fractures, a brain contusion and swelling, and internal bleeding.
 {¶ 11} At the bench trial, the trial court granted Earls's Crim.R. 29 motion for acquittal on the two assault charges that alleged that Earls had assaulted Maxfield and Eden Aviv (the "Arab-looking" man). But the court found Earls guilty of two felonious-assault charges and sentenced him to two concurrent sentences of eight years.
 II. Judicial Bias {¶ 12} In his first assignment of error, Earls argues that (1) the trial court displayed bias against him, and (2) the bias resulted in the trial court's improper denial of his mistrial motions.
 {¶ 13} Earls argues that the trial court displayed bias by (1) yelling at Earls's counsel for reading a grand-jury transcript at the defense table with him; and (2) forcing him to testify in handcuffs and jail attire instead of street clothes. Earls's trial counsel also alleged that he had overheard a conversation that suggested that the trial court had preordained a conviction against Earls.
 {¶ 14} It appears from the parties' briefs that Earls's trial counsel has filed an affidavit with the Ohio Supreme Court regarding the allegation of bias. It does not appear that this grievance has been resolved as of this decision.
 {¶ 15} In any case, it is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law.[5] And the Ohio Supreme Court has described judicial bias as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts."[6]
 {¶ 16} But the only avenue available to a criminal defendant for asserting a claim that the trial judge was biased or prejudiced against him at any stage of his case is to file an affidavit of disqualification with the Ohio Supreme Court under R.C. 2701.03. The Ohio Constitution holds that "[t]he Chief Justice of the Ohio Supreme Court, or his designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced."[7]
 {¶ 17} Though this rule places an almost impossible burden on defendants and their counsel — and may have grown up through a lack of appreciation of the difference between the appearance of bias before trial and the showing of bias during trial — it is the law and we must follow it.
 {¶ 18} Accordingly, we lack jurisdiction to void a judgment of the trial court because of a judge's bias or prejudice.[8] Earls's first assignment of error is thus overruled.
 III. Manifest Weight of the Evidence {¶ 19} In his second assignment of error, Earls argues that his conviction was against the manifest weight of the evidence.
 {¶ 20} A review of the manifest weight of the evidence puts the appellate court in the role of a "thirteenth juror."[9]
We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[10] A new trial should be granted only in exceptional cases, where the evidence weighs heavily against conviction.[11]
 {¶ 21} Earls was convicted of two counts of felonious assault. The relevant statute states that "no person shall knowingly do either of the following: (1) cause serious physical harm to another * * *; (2) cause or attempt to cause physical harm to another * * * by means of a deadly weapon."[12]
 {¶ 22} The state offered the testimony of Berkheimer, Maxfield, Washington, and two Cincinnati police officers. Berkheimer testified that he had seen Earls attempting to sell drugs on the porch of the house and had ordered him off the property. He then saw Earls running around the street with a rake, challenging partygoers to fight him. Berkheimer also recounted how, as he was escorting Maxfield back to the porch, he had been hit in the head.
 {¶ 23} Maxfield testified about the circumstances of the party before being punched in the face by JoJo. But it was Washington who provided the court with the testimony that it found to be the most credible and persuasive. Washington testified that as he and Berkheimer helped Maxfield back to the house, he had seen "out of the corner of [his] eye, * * * somebody running over from by the Earls's house and then probably three seconds later, * * * somebody winding up, and it was Billy, and he took a home run sized swing at Noah." While Washington was not certain of the weapon that had hit Berkheimer, he was "100% certain" that Earls had been the attacker, and that he had used either a rake or a pipe.
 {¶ 24} While Earls presented a different version of events and claimed that he had not seen who had hit Berkheimer, our review of the record does not persuade us that the trial court clearly lost its way and created a manifest miscarriage of justice in finding Earls guilty of felonious assault. Therefore, the conviction was not against the manifest weight of the evidence. Accordingly, we overrule Earls's second assignment of error.
 IV. Right to Confront Witnesses {¶ 25} In Earls's third assignment, he argues that the trial court denied him the right to confront Berkheimer and Maxfield. At trial, Earls's counsel tried to discredit Berkheimer and Maxfield's testimony by demonstrating their lack of credibility in recalling the events and in identifying Earls as the attacker. But when Earls's counsel pressed the witnesses by asking repetitive questions, the trial court sustained the state's objections because the questions had already been asked and answered.
 {¶ 26} The confrontation clause of the Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." The right of confrontation is a fundamental right, incorporated through the Fourteenth Amendment and secured for defendants in state as well as federal criminal proceedings.[13] The right "means more than being allowed to confront the witness physically."[14] Indeed, "[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."[15]
 {¶ 27} But the confrontation clause of the Sixth Amendment does not prevent a trial court from imposing limits on defense counsel questioning the credibility of a state's witness. The trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[16] And the United States Supreme Court has noted that "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."[17]
 {¶ 28} In the present case, the trial court did not impinge Earls's right to confront Berkheimer and Maxfield. Earls's trial counsel asked repetitive questions and the trial court sustained the state's objections to those questions as having been asked and answered. These sustained objections did not impede Earls from presenting his version of the events during the defense's case.
 {¶ 29} Earls's third assignment of error is overruled.
 V. Maximum Sentences {¶ 30} In his fourth assignment of error, Earls argues that the trial court violated Blakely v. Washington[18] andUnited States v. Booker[19] by imposing a sentence of eight years for felonious assault, a second-degree felony.
 {¶ 31} While this appeal was pending, the Ohio Supreme Court ruled in State v. Foster that R.C. 2929.14(C) is unconstitutional.[20] Prior to Foster, for a trial court to order a maximum sentence under R.C. 2929.14(C), the court needed to find that the offender (1) committed the worst form of the offense, (2) posed a great likelihood of committing future crimes, (3) was a major drug offender under R.C. 2929.14(D)(3), or (4) was a repeat violent offender under R.C.2929.14(D)(2).[21] The Ohio Supreme Court reasoned that because R.C. 2929.14(C) requires "judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant," it violatesBlakely v. Washington and is unconstitutional.[22]
 {¶ 32} The Ohio Supreme Court's remedy was to sever R.C.2929.14(C) as unconstitutional and to keep the remaining unaffected provisions of the sentencing statutes, thus severing the statute's head and claiming that the body still lived. After severing R.C. 2929.14(C), the court held that "judicial factfinding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based on a jury verdict or admission of the defendant."[23] Accordingly, trial courts now have discretion to impose a prison sentence within the statutory range and are no longer required to provide reasons for imposing a maximum prison term.[24]
 {¶ 33} In this case, the trial court noted before sentencing that Earls had previously been convicted of theft and receiving property in Indiana, of having a weapon under disability, and of disorderly conduct. Due to Earls's record, the trial court found that Earls possessed the greatest likelihood of recidivism and thus sentenced him to eight years in prison, the maximum for felonious assault, a second-degree felony.
 {¶ 34} But because Earls was sentenced under unconstitutional statutes, we must sustain the assignment of error, vacate the sentence, and remand the case for resentencing in light ofFoster.
 {¶ 35} In light of the acrimonious nature of the proceedings, and Earls's counsel's filing an affidavit of judicial bias with the Ohio Supreme Court, we caution the trial court that the maximum sentence of eight years for felonious assault may seem harsh. In fact, given the seriously hostile proceeding to date, perhaps another judge should do the resentencing. We urge the trial court to carefully review Earls's sentence.
Sentence vacated and cause remanded for resentencing.
Hildebrandt, P.J., and Gorman, J., concur.
[1] R.C. 2903.11.
[2] R.C. 2903.13(A).
[3] See Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531.
[4] See State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470.
[5] See State v. Lamar, 95 Ohio St.3d 181, 2002-Ohio-2128,767 N.E.2d 166, at ¶ 34, citing Rose v. Clark (1986),478 U.S. 570, 577, 106 S.Ct. 3101; Tumey v. Ohio (1927), 273 U.S. 510,534, 47 S.Ct. 437.
[6] Id., citing State ex rel. Pratt v. Weygandt (1956),164 Ohio St. 463, 132 N.E.2d 191, paragraph four of the syllabus;Cleveland Bar Assn. v. Cleary (2001), 93 Ohio St.3d 191, 201,754 N.E.2d 235.
[7] Section 5(C), Article IV, Ohio Constitution. See, also,State ex rel. Pratt, 164 Ohio St. 463, 132 N.E.2d 191, paragraph three of the syllabus.
[8] See Beer v. Griffith (1978), 54 Ohio St.2d 440, 441-442,377 N.E.2d 775.
[9] See State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541.
[10] Id., citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211.
[11] Id.
[12] R.C. 2903.11(A)(1) and (2).
[13] See Delaware v. Van Arsdall (1986), 475 U.S. 673, 679,106 S.Ct. 1431, citing Pointer v. Texas (1965), 380 U.S. 400,85 S.Ct. 1065.
[14] Id., citing Davis v. Alaska, 415 U.S. 308, 315,94 S.Ct. 1105.
[15] Id.
[16] See State v. Melton (19, 141 Ohio App.3d 713, 720,753 N.E.2d 241, quoting Van Arsdall, 475 U.S. at 679,106 S.Ct. 1431.
[17] Id., citing Van Arsdall, 475 U.S. at 679,106 S.Ct. 1431, quoting Delaware v. Fensterer (1985), 474 U.S. 15, 20,106 S.Ct. 292.
[18] Blakely, 542 U.S. 296, 124 S.Ct. 2531.
[19] See United States v. Booker (2005), 543 U.S. 220,125 S.Ct. 738.
[20] See State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 61.
[21] R.C. 2929.14(C).
[22] Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph one of the syllabus.
[23] Id. at ¶ 99.
[24] Id. at ¶ 100.