[Cite as *State v. Gotshall*, 2016-Ohio-3122.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**


STATE OF OHIO,                          :          **O P I N I O N**

        Plaintiff-Appellee,         :

        - vs -                            :          **CASE NO. 2015-P-0057**

CHRIS H. GOTSHALL,              :

        Defendant-Appellant.      :


Criminal Appeal from the Portage County Court of Common Pleas.
Case No. 2014 CR 00773.

Judgment: Affirmed and remanded.


*Victor V. Vigluicci*, Portage County Prosecutor, and *Kristina Drnjevich*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Jeffrey Jakmides*, 325 East Main Street, Alliance, OH 44601 (For Defendant-Appellant).


TIMOTHY P. CANNON, J.

{¶1}     Appellant, Chris H. Gotshall, appeals from the sentencing entry of the Portage County Court of Common Pleas following his conviction of one count of felonious assault.  For the following reasons, we affirm and remand the trial court's judgment.

{¶2}     This case emanates from an encounter that occurred between appellant and Nick Duplessis on August 3, 2014, which resulted in damage to Nick's vehicle.

Appellant was indicted on October 16, 2014, on one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2). Appellant pled not guilty, and a jury trial ensued.

{¶3} Nick was dating appellant's ex-girlfriend, Faydera Wood, at the time of the incident. Ms. Wood testified that she broke up with appellant after she discovered he was "bashing [her] on social media to his family, friends." She testified appellant did not react well to her breaking up the relationship. Nick and appellant both testified that the three of them had a tense encounter at a storage unit in July 2014, not long after appellant and Ms. Wood had ended their relationship. The facts of the August 3, 2014 incident were disputed at trial.

{¶4} According to Nick, while he was stopped at a stop sign on August 3, 2014, appellant pulled up behind him. Nick threw his hands up in the air to indicate "what are you doing here." Appellant tried to drive around the driver's side of Nick's vehicle and hit the rear left side of Nick's vehicle with the front right side of appellant's vehicle. Nick then turned right on to the cross street in an attempt to get away from appellant, but appellant followed him and tried to force him off the road by colliding into the driver's side of Nick's vehicle. Nick sped up and then stopped his car angled in the roadway so that appellant could not leave the development. Nick got out of his vehicle to look at the damage and started walking towards appellant. Nick testified that appellant backed up and then sped forward in an attempt to run him down with his car. Nick stated appellant came within inches of Nick's person and, at the last second, swerved to avoid hitting him. Appellant did not stop to address the damage to Nick's vehicle.

2

{¶5} Appellant testified in his own behalf and described Nick as the aggressor. According to appellant, he was driving in the middle of the road to avoid potholes, and Nick was "riding my back bumper for awhile." He testified that Nick drove around his passenger side, struck his vehicle, and tried to force him off the road. "When he realized that he couldn't do it, he went past me, made a left turn, stopped in the middle of the road, got out of his car and was pointing his hand at me as if he was holding a gun." Appellant testified he started backing up, and Nick came towards him as though he was holding a gun. Appellant testified he then put his car into drive to avoid backing into a ditch and drove forward past Nick, coming within two feet of him. During cross-examination, appellant was unable to explain why the damage to Nick's vehicle was consistent with Nick's version of events.

{¶6} Also during cross-examination, the prosecutor asked appellant about his feelings regarding his break-up with Ms. Wood. Appellant testified he harbored no ill feelings and that the break-up was mutual. In an attempt to impeach appellant's credibility, the prosecutor used a printout from Facebook to refresh appellant's recollection regarding a conversation he had with a third party. That conversation included statements evidencing appellant's negative feelings about Ms. Wood and the end of the relationship. Defense counsel repeatedly objected to the use of this printout, accusing the prosecutor of withholding evidence during discovery. The prosecutor responded he was not admitting the printout into evidence, and the trial court overruled the objections. Defense counsel also moved for a mistrial, which the court denied. On May 6, 2015, appellant was found guilty of felonious assault by the jury.

3

**{¶7}** Two days later, on May 8, 2015, the trial court held a hearing with defense counsel and the prosecutor to address defense counsel's allegation that the prosecutor had committed a discovery violation. The hearing was requested by counsel to correct the record, as defense counsel had discovered that he overlooked the printout on the disc provided by the prosecutor during discovery. Defense counsel apologized, withdrew his objections to the use of the printout during cross-examination, and withdrew his motion for a mistrial. Appellant was not present at this hearing.

**{¶8}** On August 4, 2015, appellant was sentenced to four years in prison. The sentencing entry mistakenly states that appellant pled guilty to felonious assault. We will remand this matter for the trial court to issue a nunc pro tunc entry indicating appellant was found guilty of felonious assault following a jury trial.

**{¶9}** Appellant filed a timely appeal and initially asserted one assignment of error: "The trial court erred when it permitted the State to question Appellant regarding written statements made to a third-party who was not called to testify despite the fact that the Prosecutor intentionally failed to disclose this evidence to the Defense in discovery."

**{¶10}** After receiving appellee's brief in response, appellant filed a motion for leave to file an amended brief. In his motion, appellant conceded no discovery violation had taken place, stating, "it does appear that a hearing was held subsequent to the jury trial in which prior defense counsel acknowledged that the material at issue had in fact been turned over during the discovery process." Appellant was apparently unaware that such hearing took place, as was appellate counsel due to the fact that the transcript of the hearing was dated and docketed incorrectly.

4

{¶11} We granted appellant's motion for leave to amend, and his amended assignments of error are as follows:

> [1.] Appellant received ineffective assistance of counsel at the trial level. Trial counsel admitted to having not fully reviewed the discovery file, and as such was completely unprepared for a line of questioning which he deemed so prejudicial to the Appellant that he moved for a mistrial. Were it not for counsel's errors, the result of the trial would have been different.

> [2.] Appellant's Constitutional and statutory rights to be present for all stages of trial were violated by his exclusion from the hearing during which defense counsel admitted to having received disputed evidence file[d] during the discovery process.

Appellee did not file a response to appellant's amended brief.

{¶12} Under his first assignment of error, appellant argues he received ineffective assistance of counsel due to trial counsel's failure to fully review the discovery file. He argues the failure to notice the printout of the Facebook conversation resulted in defense counsel not calling the third party as a witness and not properly preparing appellant for questioning with regard to this information.

{¶13} In order to prevail on an ineffective assistance of counsel claim, an appellant must demonstrate that trial counsel's performance fell "below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus (adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)). There is a general presumption that trial counsel's conduct is within the broad range of professional assistance, *id.* at 142, and debatable trial tactics do not generally constitute deficient performance. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995).

5

{¶14} The record reflects that, during appellant's cross-examination, appellant's trial counsel became aware of statements, as noted above, which appellant made in a private conversation with a third party on Facebook. Defense counsel repeatedly objected to the use of this evidence, stating he had never seen the printout containing the statements and it had not been turned over during discovery. The prosecutor responded that he was not admitting the printout into evidence but was merely using the statements for impeachment purposes. Defense counsel moved for a mistrial and indicated to the court that his trial preparation and strategy would have been different had he been made aware of the printout prior to trial. The trial court overruled the objections and motion.

{¶15} Two days after the jury found appellant guilty of felonious assault, a hearing was held regarding defense counsel's allegation of a discovery violation by the prosecutor. Appellant was not present and there is no indication he was made aware of this hearing. At the hearing, defense counsel admitted the document containing the statements had been provided on a discovery disc but he had missed it during his trial preparation. Based on his revealed oversight, defense counsel withdrew his objections to use of the evidence during appellant's cross-examination and withdrew his motion for a mistrial. Appellant asserts he was prejudiced because, had his trial counsel been aware of this evidence prior to trial, he would have prepared a different trial strategy.

{¶16} In order to show that he was prejudiced by trial counsel's oversight, appellant must be able to demonstrate a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Bradley*, *supra*, at paragraph three of the syllabus. "A 'reasonable probability' is a probability sufficient to

6

undermine confidence in the outcome." *State v. Johnston*, 39 Ohio St.3d 48 (1988), paragraph five of the syllabus.

**{¶17}** Crim.R. 16(B) provides that, upon written demand by the defendant, the prosecuting attorney must provide certain items that "are material to the preparation of a defense, *or* are intended for use by the prosecuting attorney as evidence at the trial[.]" (Emphasis added). "Intended for use" has been interpreted to mean the state is required to provide materials it "reasonably anticipates using at trial." *State v. Hemsley*, 6th Dist. Williams No. WM-02-010, 2003-Ohio-5192, ¶18, citing *State v. Finnerty*, 45 Ohio St.3d 104, 108 (1989). Courts have held that when "the eventuality upon which the prosecution's use of undisclosed evidence was predicated * * * was sufficiently remote" so that the prosecution could not have reasonably anticipated using it at trial, the evidence does not fall within Crim.R. 16(B) as "intended for use." *See, e.g., Hemsley, supra*, at ¶18 (undisclosed IRS form used to impeach the defendant only after he testified on cross-examination that he had not gambled); *State v. Hirtzinger*, 124 Ohio App.3d 40, 48 (2d Dist.1997) (undisclosed phone bill used to impeach the defendant only after she testified on cross-examination that she had called her ex-husband); *but see State v. Solether*, 6th Dist. Wood No. WD-07-053, 2008-Ohio-4738, ¶44-45 (upholding a discovery violation because the undisclosed evidence went to an element of the crime).

**{¶18}** First, it is important to note that the statements contained in the printout are not material to proving any element of felonious assault. *See* R.C. 2903.11(A)(2) ("No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance.").

7

{¶19} Second, the state did not intend to admit the printout into evidence. Rather, the printout was used to impeach appellant only after he testified that he did not harbor any negative feelings about the end of his relationship with Ms. Wood. It was handed to appellant to refresh his recollection regarding the statements he made on Facebook indicating he actually did have negative feelings. Ms. Wood had also testified regarding appellant's negative statements in social media. Thus, we find that the eventuality upon which the prosecution's use of the printout was predicated—i.e., that appellant would deny ever having negative feelings about the break-up—was sufficiently remote so that the state may not have reasonably anticipated needing to use it at trial. Therefore, even if the state had failed to disclose the printout (which it did not), this would not have been a discovery violation under Crim.R. 16(B) or *Finnerty*.

{¶20} Appellant argues he may not have chosen to take the stand to testify about his version of events if he knew the prosecutor had information regarding a possible motive. This would have prevented the prosecutor from using the Facebook statements to impeach his credibility. Had he not taken the stand, the jury would only have been presented with Nick's testimony regarding his version of events. It is evident from the finding of guilty, however, that the jury believed Nick's version of events.

{¶21} Appellant also argues that, if he had been aware of the possibility that the prosecution would use the Facebook post as impeachment evidence, he may have testified differently regarding his feelings concerning the break-up with Ms. Wood. Appellant was aware the evidence existed, however, as he admitted he made the statements on Facebook. Additionally, Ms. Wood testified regarding appellant's negative response to the break-up on social media. We cannot say, therefore, that trial

counsel's failure to discover the document caused appellant to be impeached on the stand.

{¶22} Finally, appellant asserts that due to trial counsel's failure, he was unable to call as a witness or interview the third party involved in the conversation on Facebook. It is unclear how that could have benefitted appellant, and suggesting it would have changed the outcome of the trial is highly speculative. A review of the record indicates the prosecution presented sufficient evidence of felonious assault notwithstanding the attack on appellant's credibility or the questioning of his motive. For all of these reasons, appellant has not shown a reasonable probability the outcome at trial would have been different had trial counsel observed the document prior to trial.

{¶23} As a result, appellant has not established under the two-pronged *Strickland* test that he was prejudiced due to his trial counsel's failure to observe the printout on the discovery disc prior to trial. We therefore do not need to decide whether trial counsel's performance fell below an objective standard of reasonable representation.

{¶24} Appellant's first assignment of error is without merit.

{¶25} Under his second assignment of error, appellant argues his exclusion from the post-trial hearing violated his rights under the U.S. Constitution, the Ohio Constitution, and Ohio law. The prosecutor stated that he and defense counsel requested the hearing in order to "correct the record." At the hearing, defense counsel admitted receiving the disputed discovery, withdrew his objections to its use during cross-examination, and withdrew his motion for a mistrial.

{¶26} "A criminal defendant has a federal and state fundamental due process right to be present at all critical stages of his trial, absent a waiver of rights or other extraordinary circumstances." *State v. Drummond,* 7th Dist. Mahoning No. 05-MA-197, 2006-Ohio-7078, ¶93 (citations omitted). Section 10, Article I of the Ohio Constitution states, "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel[.]" Additionally, Ohio Crim.R. 43(A) reads: "[T]he defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules."

{¶27} The scope of a defendant's right to be present is discussed in *United States v. Gagnon*, 470 U.S. 522, 526-527 (1985):

> The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, *e.g., Illinois v. Allen*, 397 U.S. 337 (1970), but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him. In *Snyder v. Massachusetts*, 291 U.S. 97 (1934), the Court explained that a defendant has a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge. * * * [The] presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.' *Id.* at 105-106, 108; *see also Faretta v. California*, 422 U.S. 806, 819, n.15 (1975).

{¶28} Here, no witnesses testified and no evidence was offered against appellant at the hearing to correct the record; thus, appellant cannot claim his right to be present under the Confrontation Clause was violated. *State v. Davie*, 11th Dist. Trumbull No. 92-T-4693, 1995 Ohio App. LEXIS 6064, *146-147 (Dec. 27, 1995).

**{¶29}** Additionally, a fair and just hearing could be held in appellant's absence as he could not assist his trial counsel in apologizing for the discovery oversight or in withdrawing the motion and objections that were based on that oversight. The hearing at issue can be likened to an on-the-record conference in chambers; nothing substantively related to the charges against appellant was discussed. Further, the motion for mistrial was withdrawn, not argued, as the basis for the motion no longer existed. Thus, "it is evident that appellant's due process rights were not violated as his presence at the hearing did not have a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Id.* at *147.

**{¶30}** As a culmination of this analysis, we hold that the hearing held for purposes of correcting the record due to a discovery oversight was not a "stage of the criminal proceeding and trial," as contemplated in Crim.R. 43(A), for which appellant was entitled to be present. "Other cases have similarly held that the defendant need not be present at every conceivable event that occurs." *Id.* at *147-148, citing *Snyder, supra* (defendant need not be present at the jury view of the crime scene); *Fielden v. Illinois,* 143 U.S. 452 (1892) (defendant had no due process right to be present when appellate court affirmed death sentence and set forth date of execution); and *United States v. Sanchez*, 917 F.2d 607 (1st Cir.1990) (defendant had no right to be present at hearing on motion for new trial).

**{¶31}** Appellant's second assignment of error is without merit.

**{¶32}** For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed. We must remand this matter, however, for the trial court to

enter a nunc pro tunc entry reflecting that appellant did not plead guilty to felonious assault but rather was found guilty following a jury trial.

CYNTHIA WESTCOTT RICE, P.J.,

THOMAS R. WRIGHT, J.,

concur.

12