[Cite as *State v. Loudermilk*, 2017-Ohio-7378.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160487 |
| | | TRIAL NO. C-15CRB-23628 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| MICHAEL LOUDERMILK, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 30, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman*, Assistant Public Defender, for Defendant-Appellant.

**MILLER, Judge.**

{¶1}    Defendant-appellant Michael Loudermilk was charged under R.C. 2907.09(A)(1) with public indecency involving a minor.  We hold: (1) "physical proximity" as used in R.C. 2907.09(A)(1) means the victim is near enough to observe the offender's private parts; (2) a criminal defendant is not required to disclose evidence used only for the purpose of impeaching a witness; and (3) intermediate appellate courts have jurisdiction to review a claim of judicial bias that is alleged to result in the violation of a defendant's due process rights.

{¶2}    Loudermilk, shirtless and in blue nylon running shorts, and his wife were removing drywall from the first floor of their house when 16-year-old A.M. walked by on the opposite side of the street.  A.M. heard what sounded like knocking on glass.  She turned and saw Loudermilk pull down his shorts and expose his penis while standing at the window.  A.M. proceeded home in shock and told her mother.

{¶3}    A jury found Loudermilk guilty.  The court sentenced him to a suspended term of 90 days in jail, and one year of community control with electronic monitoring for 60 days and referral to the court clinic.  On appeal, Loudermilk asserts four assignments of error.  First, Loudermilk claims his conviction was based on insufficient evidence and was contrary to law.  Second, he argues that the court abused its discretion when it excluded impeachment evidence for not having been disclosed and excluded a portion of the testimony from the defendant's investigator.  Third, Loudermilk complains that the trial court committed plain error when it admitted unsworn testimony.  Finally, he asserts that he was denied a fair trial because his trial judge was biased.  Although we find merit in Loudermilk's impeachment evidence argument, we affirm the trial court's judgment because this error was harmless.

**The Conviction Was Based on Sufficient Evidence and Was Not Contrary to Law**

{¶4} In his first assignment of error, Loudermilk claims his conviction was based on insufficient evidence and was contrary to law. Specifically, Loudermilk claims the state failed to establish that A.M. was in physical proximity to him, as required by R.C. 2907.09(A)(1), because he was inside the house and she was on the sidewalk across the street. He asserts his conviction was contrary to the manifest weight of the evidence because the windows on the first floor of Loudermilk's home were tinted, which would have obstructed A.M.'s view. He further challenges A.M.'s and her mother's credibility and points to contradictory testimony regarding the color of his shorts.

{¶5} In a challenge to the sufficiency of the evidence, the question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In reviewing a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and thereby created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶6} R.C. 2907.09(A)(1) prohibits a person from recklessly exposing his private parts under circumstances in which the person's conduct is likely to be viewed by and affront others who are in that person's physical proximity, provided those persons are not members of the same household. A.M. testified that she was walking down the street when she repeatedly heard what sounded like someone knocking on glass. When

she turned she saw Loudermilk expose his penis to her. Loudermilk told a very different story. He testified that he was working with the windows open when he noticed A.M. standing on the sidewalk staring at him for two or three minutes before walking away. Essentially, Loudermilk urges us to believe him over A.M. But, Loudermilk's claim that A.M. stared at him for two or three minutes through an open window is contrary to his contention that A.M. could not see him because the window was tinted. We cannot fault the jury for believing A.M. He also challenges the credibility of the state's witnesses. The jury was in the best position to judge credibility of witnesses and the weight to be given to the evidence. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶7} Loudermilk also asserts that a person inside his home cannot be in "physical proximity," as required by the statute, to a person across the street. Revised Code Section 2907.09 does not define "physical proximity." Therefore, we apply its common, ordinary meaning. *See Cincinnati Metro. Hous. Auth. v. Edwards*, 174 Ohio App.3d 174, 2007-Ohio-6867, 881 N.E.2d 325, ¶ 19 (1st Dist.). "Physical" means "[o]f, relating to, or involving someone's body as opposed to mind" and "proximity" means "[t]he quality, state, or condition of being near in time, place, order, or relation." *Black's Law Dictionary* 1331 and 1421 (10th Ed.2014). Therefore, we interpret "physical proximity," as used in R.C. 2907.09, as meaning that the victim is near enough to observe the offender's private parts. A.M. was on the sidewalk across the street when she heard the sound that drew her attention to Loudermilk. The fact that Loudermilk was inside the house and A.M. was across the street does not mean A.M. could not be in physical proximity to Loudermilk. A.M. was near enough to him to see his penis through an open window when he pulled down his shorts. This evidence was sufficient to establish that A.M. was in physical proximity to Loudermilk.

4

{¶8}     Our review of the record reveals that the state presented sufficient, credible evidence from which the factfinder could have reasonably concluded that the state proved each element of the offense beyond a reasonable doubt.  *See Jenks* at paragraph two of the syllabus.  Additionally, our review of the entire record fails to persuade us that the factfinder clearly lost its way and created such a manifest miscarriage of justice that we must reverse Loudermilk's conviction and order a new trial. *See Martin* at 175.  As a result, we overrule Loudermilk's first assignment of error.

## Exclusion of Impeachment Photographs Was Error

{¶9}     In the first of two issues raised in his second assignment of error, Loudermilk argues that the trial court abused its discretion when it excluded impeachment evidence by improperly applying disclosure requirements.  On direct examination of Loudermilk's wife, and after A.M. testified regarding Loudermilk's physical appearance, Loudermilk proffered two photographs of his groin and upper leg area showing large, red surgical scars and his shaved pubic area.  The trial court excluded the photographs because the defense did not disclose the photographs to the state prior to trial.  Loudermilk asserts that he was not required to disclose the photographs because he intended to use them only to impeach A.M.  Although the photographs were excluded, his wife was permitted to testify regarding his physical appearance at the time, including the scars and shaved pubic area.

{¶10}    When a defendant serves a written discovery demand on the prosecuting attorney, a reciprocal duty of disclosure arises to disclose evidence material to the innocence or alibi of the defendant, intended for use by the defense as evidence at the trial, or obtained from or belonging to the victim.  Crim.R. 16(H).  However, mere impeachment evidence need not be disclosed.  *See State v. Gotshall*, 11th Dist. Portage No. 2015-P-0057, 2016-Ohio-3122, ¶ 19 (holding that a party was not required to

disclose evidence proffered solely for impeachment purposes where the party did not intend to admit the evidence). "The philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial." *State v. Howard*, 56 Ohio St.2d 328, 333, 383 N.E.2d 912 (1978). "The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to produce a fair trial." *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, ¶ 18, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987). Loudermilk could not have anticipated whether A.M. would have accurately described his groin area. There is no evidence that Loudermilk concealed these photographs in order to surprise the state, because Loudermilk only intended to use the photographs to impeach A.M.'s testimony regarding his physical appearance at the time of the incident. *See State v. Rieske*, 2d Dist. Clark No. 2013 CA 92, 2014-Ohio-3643, ¶ 15-17 (holding that the trial court did not abuse its discretion in permitting the state to use undisclosed evidence and an undisclosed witness for impeachment purposes when the state could not have predicted that the defendant would contradict police evidence describing the clothes he was wearing at the time of his arrest). Moreover, prior disclosure of the photographs might have undermined their impeachment value. Therefore, the trial court's exclusion of Loudermilk's photographs for nondisclosure was improper.

{¶11} After the court excluded the photographs, defense counsel proceeded to elicit testimony from Loudermilk's wife describing Loudermilk's pubic area as depicted in the photographs, which mitigated the impact of the improper exclusion. Moreover, the photographs were of limited impeachment value as A.M. was equivocal at best regarding Loudermilk's appearance because she claimed to have quickly averted her gaze. Considering the circumstances, this error was harmless in light of Loudermilk's wife's subsequent description of Loudermilk's scars and lack of pubic hair. *See* Crim.R.

6

52(A); *State v. Mack*, 73 Ohio St.3d 502, 514-515, 653 N.E.2d 329 (1995) (holding that the erroneous exclusion of evidence of a prior inconsistent statement for impeachment of a state's witness did not prejudice the defendant in light of the abundance of other credible inculpatory evidence); *State v. McCown*, 10th Dist. Franklin No. 06AP-153, 2006-Ohio-6040, ¶ 26, 30 (holding that the erroneous exclusion of evidence intended to impeach the victim by demonstrating bias was harmless in light of the defendant's unrebutted testimony that the victim was upset with him). Accordingly, we hold that the trial court's exclusion of the impeachment photographs was harmless error.

## Exclusion of Investigator's Testimony Was Not Improper

{¶12} For the second issue in his second assignment of error, Loudermilk argues that the trial court abused its discretion when it excluded testimony of the investigator employed by Loudermilk's counsel because it found the evidence was not credible. Investigator Craig Turner conducted an investigation at the request of defense counsel. He met Loudermilk and took a picture of his house from across the street. The trial court admitted the photograph into evidence without objection. Investigator Turner testified without objection that he instructed Loudermilk to stand in one of the windows. However, the state objected when Investigator Turner was asked which window Loudermilk was standing in when he took the photograph.

{¶13} Loudermilk now contends that the trial court abused its discretion when it sustained the objection. In granting the objection, the trial court explained that:

THE COURT: Part of the reason is is [sic] that conditions could not be created to be similar to the date of the incident. Furthermore, photographs versus being in person and visually seeing can be much different also. I think sometimes photographs, depending on the type of camera, and film quality, and reproduction and produced into a

7

photograph, all of those things are much different than actually being in person. And also the Court believes that it's confusing versus clarifying to the jury. So in addition to the fact that it's roughly seven months later and conditions are completely different, those are also the reasons of the Court for sustaining the objection and not permitting testimony.

* * *

[W]hat we're looking at is Defendant's Exhibit A and that's what would go to the jury. I think it's not something that they should view in deciding the case. So therefore I'm sustaining the objection.

It appears that the judge was ruling upon the admissibility of the photograph in response to an objection about the testimony. We are mindful that the objection and her ruling were limited to testimony regarding which window Loudermilk was standing in. Neither the photograph, nor the testimony that Loudermilk was standing in one of the windows, was excluded. So the main thrust of Investigator Turner's testimony was admitted. It is unclear how testimony regarding which window he was behind would have aided the jury or affected the outcome of the case. Further, Loudermilk testified that he was working with the windows open and that A.M. stared at him for two or three minutes. Therefore, whether Loudermilk was visible through tinted glass was irrelevant. *See* Evid.R. 401. The error, if any, in excluding the investigator's testimony was harmless.

{¶14}   We overrule Loudermilk's second assignment of error.

### Admission of Unsworn Testimony Was Not Plain Error

{¶15}   In his third assignment of error, Loudermilk complains that the trial court committed plain error when it admitted the unsworn testimony of A.M.'s mother. While it is error to admit unsworn testimony, Loudermilk forfeited all but plain error

8

when he failed to object. *See State v. Norman*, 137 Ohio App.3d 184, 198, 738 N.E.2d 403 (1st Dist.1999); Crim.R. 52(B). Loudermilk has offered no evidence that A.M.'s mother testified untruthfully as a result of this oversight. He has failed to establish that this error affected the outcome of the trial. *See State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Accordingly, we overrule Loudermilk's third assignment of error.

## Trial Judge Was Not Biased

{¶16} In his fourth assignment of error, Loudermilk asserts that he was denied a fair trial because his trial judge was biased. First, Loudermilk complains that the trial judge stated, "I don't want statements made after your objections. I think you're guiding the witness, so it will be overruled." Second, he claims the judge demonstrated bias when she chastised the defense counsel for not setting up an inspection time for the state to review A.M.'s mother's criminal record and excluded the photographs of Loudermilk.

{¶17} The term "judicial bias" has developed two related but independent meanings, which can cause confusion. The first meaning relates to the formal process used to remove a judge from hearing a case because the judge has an interest in the matter or is prejudiced in favor of one party. The second type of bias, which is being alleged here, occurs when a judge's conduct in overseeing a case prevents a party from receiving a fair trial.

{¶18} In *State v. Johnson*, 140 Ohio App.3d 385, 391, 747 N.E.2d 863 (1st Dist.2000), we held that, "[g]enerally, the proper avenue for redress when a party believes that the trial judge is biased is the filing of an affidavit of bias and prejudice with the Supreme Court of Ohio." In *State v. Earls*, 1st Dist. Hamilton No. C-040531, 2006-Ohio-4029, we extended our holding in *Johnson*. In *Earls*, we held that we do not have

9

jurisdiction to void a judgment of a trial court based on a claim of judicial bias because the only avenue for a criminal defendant to assert a claim of a judicial bias is to file an affidavit of disqualification with the Ohio Supreme Court under R.C. 2701.03. *Id.* at ¶ 16-18. We explained that the Chief Justice of the Ohio Supreme Court has sole authority to determine issues of disqualification on the basis of a trial court's alleged bias or prejudice. *Id.* at ¶ 16, quoting Article IV, Section 5(C), Ohio Constitution. We have not been alone in reaching this conclusion. *See State v. Bacon*, 8th Dist. Cuyahoga No. 85475, 2005-Ohio-6238, ¶ 66 (holding that an appellate court lacks jurisdiction to void the judgment of a trial court on the basis of judicial bias or prejudice because a party's exclusive remedy was to file an affidavit of disqualification pursuant to R.C. 2701.03); *State v. Manuel*, 12th Dist. Butler No. CA2002-12-293, 2003-Ohio-5713, ¶ 34 (explaining that an appellate court is without authority to decide disqualification issues because that is an issue to be decided by the Chief Justice of the Ohio Supreme Court).

{¶19} Recently, Chief Justice O'Connor, when ruling on a disqualification matter, rejected our holding in *Earls*. The Chief Justice stated that *Earls* "misquoted (and misinterpreted)" the Ohio Constitution by stating that the chief justice has *exclusive* jurisdiction to determine whether a common pleas judge is biased or prejudiced. *In re Disqualification of Zmuda*, 149 Ohio St.3d 1241, 2017-Ohio-317, 75 N.E.3d 1255, ¶ 11. Chief Justice O'Connor stated that an affidavit of disqualification is not the sole method available to raise a claim of judicial bias and explained that a biased judge denies a defendant the due process of law. *Id.* Although a disqualification is ruled on by a single justice and is not akin to an opinion of the full court, we find this reasoning persuasive. Indeed, the Ohio Supreme Court has held that failure to raise a claim of judicial bias to the court of appeals forfeits such a claim. *See State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 35. *LaMar* is binding. Our court

has the authority to review a claim of judicial bias as it impacts the outcome of the case. Accordingly, we overrule *Earls*.

{¶20}    Here, Loudermilk does not allege that the trial judge should have been disqualified or that she harbored a pre-existing bias for or against anyone involved in this case.   Instead, he argues that the trial judge's conduct during trial improperly favored the state and denied him his right to a fair trial.   We do have jurisdiction to review a claim of judicial bias that is alleged to result in a violation of a defendant's due process rights.

{¶21}    Judicial bias is demonstrated by "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469, 132 N.E.2d 191 (1956), paragraph four of the syllabus.  Here, the trial court's comments manifested no hostile feelings, ill will, undue friendship, or favoritism toward either side.  The record contains no evidence that the trial judge reached a decision based on bias against Loudermilk or otherwise prevented him from receiving a fair trial.  As a result, we overrule Loudermilk's fourth assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**MOCK, P.J.,** concurs.
**MYERS, J**., concurs separately.

**MYERS, J.,** concurring separately.

{¶22}    I would not reach the issue of whether the photographs of Loudermilk's pubic region were required to be disclosed under Crim.R. 16 because I find that even if they were, the trial court properly excluded them.   Loudermilk

attempted to have his wife identify photographs of his pubic region, arguing they "impeached" A.M.'s testimony. He did not attempt to cross-examine A.M. with these photographs. Rather, he attempted to admit them into evidence through the testimony of his wife. Accepting Loudermilk's argument that the photographs were solely for impeachment purposes (and that he therefore was not required to disclose them under Crim.R. 16), they were inadmissible as extrinsic evidence offered solely for impeachment. *See* Evid.R. 616. Under Evid.R. 616, extrinsic evidence of contradiction offered solely for the purpose of impeaching a witness's testimony is inadmissible unless it falls into one of the listed exceptions. The photographs in this case are extrinsic evidence and do not fall within any of the exceptions. Thus, the trial court properly excluded them.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.