[Cite as *State v. Greenway*, 2017-Ohio-7729.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160511 |
| | | TRIAL NO. C-15CRB-10942 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| LEAH GREENWAY, | : | |
| | | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  September 22, 2017


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Demetra Stamatakos*, Assistant Public Defender, for Defendant-Appellant.

**MOCK, Presiding Judge.**

{¶1}   Following a bench trial, defendant-appellant Leah Greenway was convicted of one count of possessing drug-abuse instruments under former R.C. 2925.12.   She presents four assignments of error for review.   We find merit in her fourth assignment of error related to her sentencing.   Consequently, we affirm the finding of guilt, but vacate the sentence and remand the matter for resentencing.

### I.   Facts and Procedure

{¶2}   The record shows that on May 1, 2015, Officer Michael Hackman of the Forest Park Police Department responded to a radio call for a "non-breather, someone that had overdosed."   When he arrived, he entered a residence and saw a woman sitting on a couch.   The woman, who identified herself as Greenway's mother, directed him to the basement.

{¶3}   When he went down to the basement, Officer Hackman saw the life squad "working on the defendant."   He said it appeared that they were "doing life saving measures."   He further stated that he could see that Greenway was breathing and that she was talking "somewhat" and moving.

{¶4}   Officer Hackman also observed a syringe on the floor at the foot of the bed where Greenway was lying.   He stated that it was between her right leg and a concrete wall.   Hackman collected the syringe and secured it.   Later he submitted it for testing at the Hamilton County Coroner's laboratory.   The lab analysis showed that residue in the syringe contained morphine and fentanyl.   Greenway was transported to the hospital and a warrant was later issued for her arrest.

## II. Questioning by the Trial Court

{¶5}   In her first assignment of error, Greenway contends that the trial court violated Evid.R. 614(B) and her right to due process by questioning Officer Hackman, the state's only witness.  She argues that the court ceased to be impartial when it stated on the record that the questions were meant to elicit a specific fact necessary for conviction.  This assignment of error is not well taken.

{¶6}   Evid.R. 614(B) allows the court to interrogate witnesses in an impartial manner.  *State v. Cepac*, 149 Ohio St.3d 438, 2016-Ohio-8076, 75 N.E.3d 1185, ¶ 70; *State v. Payne*, 1st Dist. Hamilton No. C-060437, 2007-Ohio-3310, ¶ 12.  Generally, we review the trial court's interrogation of a witness for an abuse of discretion. *Payne* at ¶ 12; *State v. Davis*, 79 Ohio App.3d 450, 454, 607 N.E.2d 543 (4th Dist.1992).

{¶7}   After Officer Hackman had testified, the trial court began to question him.  The court asked the officer if he was able to tell the court "what * * * the life squad was doing to her."  When Greenway objected on a number of grounds, the court held a conference in chambers.  It stated:

> Well, I'm not entirely conversant with what happens on one of these runs when somebody ODs, although it isn't uncommon, we hear more and more that people say that either officers or life squad are administering something commonly referred to that I heard of called Narcan.
>
> * * *
>
> So what I'm attempting to elicit out of the officer right now is whether he observed some kind of administration of Narcan or something like that, so that's the purpose of my question.

3

{¶8}    Greenway explained more about the basis of her objections.  The court then stated:

> Well, what I was doing is excavating his answer further.  They were working on * * * her.  Do you know what they were doing?  So if he knows what they are doing and if he says Narcan, I'll have to evaluate its weight, so I was giving you the courtesy of doing it outside of [his presence] so that he doesn't – so that he's not overly stimulated to an answer by doing it outside of [his presence].  I don't want him to get – I don't want you to be treated unfairly by some lightbulb going on in his head, oh he wants me to say Narcan, so that's why I called us in here.

{¶9}    The court overruled Greenway's objection and again asked Officer Hackman what the life squad was doing to Greenway.  He replied that they were checking her vital signs and preparing her for transport.  The officer started to testify about something a member of the life squad had told him, but Greenway objected on the basis of hearsay.  The trial court sustained the objection.

{¶10} The court then asked Officer Hackman if he saw the life squad administer any medication to Greenway.  He answered:  "All of the medicine – including Narcan, had been given prior to my arrival."  Defense counsel objected on the basis that his answer was outside of the officer's personal knowledge.  The court stated that "we're going to strike what you said about the Narcan being prior administered."  The court then asked him if he saw "Narcan there out in the open somewhere?"  The officer answered:  "[T]he equipment and containers for the Narcan were still laying on the floor around the area where the defendant was being

4

worked on." The court asked him "Did you see it with your own eyes?" and Officer Hackman replied that he did.

{¶11} We cannot hold that the trial court's questioning of the witness was an abuse of discretion. Greenway argues that the court's questioning went to an essential element of the state's case. We disagree. The evidence would have been sufficient to support the conviction even without the officer's testimony about Narcan. Further, "[i]n regard to the examination of witnesses, the trial judge is something more than a mere umpire or sergeant at arms to preserve order in the courtroom." *Davis*, 79 Ohio App.3d at 456, 607 N.E.2d 543. Rather, the court "has active duties to perform in maintaining justice and in seeing that the truth is developed, and may, for such purpose, put proper questions to the witnesses, and even leading questions." *Id.* Under the circumstances, we cannot say that the trial court's questioning was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. *See State v. Clark*, 71 Ohio St.3d 466, 470, 644 N.E.2d 331 (1994).

{¶12} The trial court's questioning would only have been improper if it had demonstrated bias, as argued by Greenway. A criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law. *Cepac*, 149 Ohio St.3d 438, 2016-Ohio-8076, 75 N.E.3d 1185, at ¶ 73. The presence of a biased judge is structural error, which, if demonstrated, requires reversal. *Id.*

> The term 'biased' implies a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.

*Id.* at ¶ 73, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St.3d 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus; *State v. Loudermilk*, 1st Dist. Hamilton No. C-160487, 2017-Ohio-7378, ¶ 21. The "threshold inquiry" is "whether, with reference to a range of acceptable, though not necessarily model, judicial behavior, the [trial] court's conduct falls demonstrably outside this range so as to constitute hostility or bias." *Cepac* at ¶ 74, quoting *McMillan v. Castro*, 405 F.3d 405, 410 (6th Cir.2005).

{¶13}   Nothing in the record shows that the trial judge exhibited favoritism toward the state and against Greenway or that he did not have an open mind. Therefore, we cannot say that the trial judge exhibited bias, and we overrule Greenway's first assignment of error.

### III. Crime Lab Report

{¶14}  In her second assignment of error, Greenway contends that the trial court erred in admitting the crime laboratory report into evidence. She argues that the report was not admissible because the accompanying notarized statement by the signer of the report was not also entered into evidence. This assignment of error is not well taken.

{¶15} The state served the lab report and the accompanying affidavit on Greenway as required by R.C. 2925.51(B). It also notified her that if she did not request the testimony of the signer of the report within seven days after receiving the report, it would be prima-facie evidence of the test results. *See State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 16; *State v. Garrett*, 5th Dist. Richland No. 03-CA-49, 2004-Ohio-2231, ¶ 19-20. The failure to serve the report and to include all of the necessary information as specifically required by the statute would have rendered it inadmissible. *See State v. McClain*, 6th Dist. Lucas No. L-10-

1088, 2012-Ohio-5264, ¶ 18-22; *State v. Putnam*, 8th Dist. Cuyahoga No. 91044, 2009-Ohio-233, ¶ 16-18; *State v. Bethel*, 5th Dist. Tuscarawas No. 2002AP0010, 2002-Ohio-5437, ¶ 9. Since Greenway received the report and the required notification and she did not request the testimony of the analyst, she waived the right to have the analyst testify at trial and to cross-examine him. *See Pasqualone* at ¶ 18-21.

{¶16} Courts have held that the failure to submit a properly notarized affidavit into evidence was harmless or was not plain error when it did not prejudice the defendant. *See State v. Hudson*, 8th Dist. Cuyahoga No. 79010, 2002 WL 472304, *3 (Mar. 28, 2002); *State v. Rodriquez*, 66 Ohio App.3d 5, 17, 583 N.E.2d 384 (6th Dist.1990). In this case, Greenway has not demonstrated how the failure to include the affidavit was prejudicial. She makes no claim that anything in the report itself was inaccurate or that a properly notarized chemical analysis would have differed in any material respect from the exhibit presented at trial. *See Hudson* at *3.

{¶17} No reasonable probability existed that the failure to submit the affidavit contributed to Greenway's conviction. Therefore, any error was harmless. *See State v. Bayless*, 48 Ohio St.2d 73, 357 N.E.2d 1035 (1976), paragraph seven of the syllabus; *State v. Brundage*, 1st Dist. Hamilton No. C-030632, 2004-Ohio-6436, ¶ 33. Consequently, we overrule Greenway's second assignment of error.

### *IV. Weight and Sufficiency*

In her third assignment of error, Greenway contends that the evidence was insufficient to support the conviction. R.C. 2925.12(A) provides:

No person shall knowingly make, obtain, possess, or use any instrument, article, or thing the customary and primary purpose of

which is for the administration or use of a dangerous drug, other than marihuana, when the instrument involved is a hypodermic or syringe, whether or not of crude or extemporized manufacture or assembly, and the instrument, article, or thing involved has been used by the offender to unlawfully administer or use a dangerous drug, other than marihuana, or to prepare a dangerous drug, other than marihuana, for unlawful administration or use.

To obtain a conviction under this statute, the state must prove that the offender had used the syringe to unlawfully administer, use, or prepare a dangerous drug. *State v. Young*, 5th Dist. Knox Nos. 16CA24 and 165CA25, 2017-Ohio-7051, ¶ 39; *State v. Lorenzo*, 9th Dist. Summit No. 26214, 2012-Ohio-3145, ¶ 20; *State v. Davis*, 1st Dist. Hamilton No. C-110620, 2012-Ohio-2642, ¶ 8.

{¶18} Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state proved beyond a reasonable doubt all of the elements of possessing drug-abuse instruments, including the use of the syringe. Therefore, the evidence was sufficient to support the conviction. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, ¶ 48. While the evidence that she possessed drug-abuse instruments was circumstantial, circumstantial and direct evidence possess the same probative value. *Jenks* at paragraph one of the syllabus; *State v. Lowery*, 160 Ohio App.3d 138, 2005-Ohio-1181, 826 N.E.2d 340, ¶ 19 (1st Dist.).

{¶19} Greenway further argues that her conviction was against the manifest weight of the evidence. After reviewing the evidence, we cannot say that the trier of

fact lost its way and created such a manifest miscarriage of justice that we must reverse her conviction and order a new trial. Therefore, the conviction was not against the manifest weight of the evidence. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Loudermilk*, 1st Dist. Hamilton No. C-160487, 2017-Ohio-7378, at ¶ 5. We overrule Greenway's third assignment of error.

### V. Right of Allocution

{¶20} In her fourth assignment of error, Greenway contends that she was denied her right of allocution at sentencing. She argues that the trial court did not address her personally and ask whether she wished to make a statement on her own behalf or present any information in mitigation of her punishment. This assignment of error is well taken.

{¶21} Crim.R. 32(A) provides that at the time of imposing sentence, the court shall "afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." The right of allocution belongs to the defendant herself. *State v. Osume*, 1st Dist. Hamilton No. C-140390, 2015-Ohio-3850, ¶ 23. The failure to afford a defendant the right of allocution is not insignificant. *State v. Long*, 1st Dist. Hamilton No. C-150713, 2016-Ohio-5345, ¶ 3. "A Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *State v. Green*, 90 Ohio St.3d 352, 359-360, 738 N.E.2d 1208 (2000). It is not enough for the trial court to simply give defense counsel the opportunity to speak on the defendant's behalf. *Osume* at ¶ 23.

{¶22} Trial courts must "painstakingly adhere to Crim.R. 32, guaranteeing the right of allocution." *Green* at 359; *Long* at ¶ 4. If a trial court imposes sentence

without first asking the defendant if he or she wants to exercise the right of allocution, resentencing is required unless the error is invited or harmless error. *State v. Campbell*, 90 Ohio St.3d 320, 738 N.E.2d 1178 (2000), paragraph three of the syllabus; *Long* at ¶ 4. An error will be deemed harmless only in unusual circumstances. *See State v. Matthews*, 1st Dist. Hamilton No. C-140663, 2015-Ohio-5075, ¶ 14; *Osume* at ¶ 24.

{¶23} The trial court erred in failing to address Greenway personally and ask her if she wished to make a statement on her own behalf or to present any information in mitigation of punishment before imposing sentence. No unusual circumstances existed to render the error harmless. Consequently, we sustain Greenway's fourth assignment of error.

### *VI. Summary*

{¶24} In sum, we find merit in Greenway's fourth assignment of error. Consequently, we reverse the sentence, and remand the cause for resentencing. We affirm the trial court's judgment in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**CUNNINGHAM** and **MILLER, JJ.,** concur.

Please note:
    The court has recorded its own entry this date.