[Cite as *State v. Ford-Delay*, 2022-Ohio-3346.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29310 |
| | : | |
| v. | : | Trial Court Case No. CRB2100087 |
| | : | |
| KATIE FORD-DELAY | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of September, 2022.

. . . . . . . . . . .

ROBERT F. JACQUES, Atty. Reg. No. 0075142, Oakwood Municipal Court Prosecuting
Attorney, 30 Park Avenue, Oakwood, Ohio 45419
       Attorney for Plaintiff-Appellee

CHRISTIE M. BEBO, Atty. Reg. No. 0087294, 117 South Main Street, Suite 400, Dayton,
Ohio 45422
       Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Katie Ford-Delay, appeals from her conviction in the Oakwood Municipal Court for one count of possessing drug abuse instruments. In support of her appeal, Ford-Delay contends that the trial court should have suppressed evidence of the drug abuse instruments at issue because the instruments were discovered as the result of police officers' detaining her illegally and conducting an unlawful search of her purse. Ford-Delay also contends that her conviction was not supported by sufficient evidence and that the trial court's decision to impose a jail sentence was an unconstitutional trial tax that punished her for pursuing her right to trial. Because we agree that the evidence presented at trial was insufficient to support Ford-Delay's conviction for possessing drug abuse instruments, the trial court's judgment convicting Ford-Delay of that offense will be vacated.

## Facts and Course of Proceedings

{¶ 2} On July 12, 2021, Officer Jeremy Smith of the Oakwood Police Department issued Ford-Delay a citation/summons in lieu of arrest for the offense of possessing drug abuse instruments in violation of R.C. 2925.12(A), a misdemeanor of the second degree.[1] Ford-Delay was cited after Officer Smith and his partner, Officer Watkins, responded to a citizen's complaint reporting that there were individuals using drugs inside a parked vehicle behind the Huntington Bank in Oakwood. After making contact with two of the vehicle's occupants and finding hypodermic needles on or near their persons, the officers

---

[1] The original citation/summons did not include the section of the Ohio Revised Code that Ford-Delay had allegedly violated. The State, however, later amended the citation/summons to reflect that Ford-Delay was being charged with a violation of R.C. 2925.12.

searched the third occupant, Ford-Delay, and found several hypodermic needles inside her purse. The citation/summons issued to Ford-Delay was based on the discovery of those needles.

{¶ 3} Ford-Delay pled not guilty to the cited offense and thereafter filed a motion to suppress the hypodermic needles that were found inside her purse. In support of the motion, Ford-Delay argued that the hypodermic needles were discovered as a result of the officers' illegally detaining her and conducting an unlawful search of her purse. The trial court held a hearing on the motion to suppress, during which Officer Smith testified. After hearing Officer Smith's testimony, the trial court denied Ford-Delay's motion to suppress, and the matter immediately proceeded to a bench trial.

{¶ 4} During the bench trial, Officer Smith was once again called to testify. Officer Smith testified that on July 12, 2021, he responded to a dispatch concerning a citizen's complaint of subjects in a vehicle using drugs in the back parking lot the Huntington Bank in Oakwood. According to Smith, it was reported that one of the subjects was a white female and that the female appeared to be high on drugs.

{¶ 5} Officer Smith testified that when he arrived at the Huntington Bank parking lot, he observed three individuals inside a vehicle that matched the description given in the dispatch. Officer Smith first made contact with a male sitting in the rear-passenger side of the vehicle with the door open. Officer Smith testified that his partner, Officer Watkins, observed a baggie near the male and thereafter conducted a pat-down search, which yielded a hypodermic needle on the male's person. Officer Smith testified that after finding the hypodermic needle, the male was detained so that the officers could run

his information through their database. Upon doing so, Officer Smith testified that he learned the male had an active warrant and therefore placed him under arrest.

{¶ 6} After arresting the male who was in the rear-passenger seat of the vehicle, Officer Smith testified that he approached a second male who was sitting in the front-passenger seat. Officer Smith testified that he asked the second male to exit the vehicle, and that when the male stood up, Officer Smith observed a hypodermic needle on the seat where the male had been sitting. Officer Smith testified that he found no other contraband on the second male. As a result of finding the hypodermic needle, Officer Smith issued the second male a citation/summons in lieu of arrest for possessing drug abuse instruments.

{¶ 7} After citing the second male, Officer Smith approached a female in the driver's seat of the vehicle, who was later identified as Ford-Delay. Officer Smith ordered Ford-Delay to exit the vehicle and observed a purse near the area where she had been sitting. Officer Smith asked Ford-Delay if the purse belonged to her and she confirmed it did. Officer Smith testified that he then searched the purse and found several hypodermic needles inside a clear plastic bag; he found no other contraband on Ford-Delay's person or inside her purse.

{¶ 8} Continuing, Officer Smith testified that after he found the hypodermic needles in Ford-Delay's purse, Ford-Delay told him: "I'll be honest with you. We don't have any drugs, but we're here at the bank to buy – to get money to go get drugs later." Trial Tr., p. 19. Officer Smith testified that Ford-Delay gave him no other explanation for having the needles inside her purse. Officer Smith testified that he did not observe any drug

residue on the needles or on any of the bags in question.   Officer Smith also testified that he did not observe any blood on the needles and that no testing for drug residue was ever performed on the needles.

{¶ 9} Following Officer Smith's testimony, Ford-Delay moved for an acquittal pursuant to Crim.R. 29 on grounds that it was pure speculation that she intended to use the hypodermic needles to administer drugs.   In opposition, the State argued that Ford-Delay's statement to Officer Smith that she and her counterparts had planned on buying drugs later was sufficient to show that the needles in her purse were intended for drug use.   The trial court agreed with the State and denied Ford-Delay's Crim.R. 29 motion.

{¶ 10} After the trial court denied the Crim.R. 29 motion, Ford-Delay testified in her defense.   During her testimony, Ford-Delay admitted to telling Officer Smith that she and her counterparts did not have any drugs but were at the bank to get money to buy drugs later.   Ford-Delay also admitted to owning the purse that contained the hypodermic needles.   Ford-Delay, however, claimed that the needles were inside a separate bag that belonged to the second male who was located in the front-passenger seat of the vehicle. Overall, Ford-Delay denied ownership of the needles and denied ever telling the officers that the needles belonged to her.

{¶ 11} After hearing the foregoing testimony, the trial court found Ford-Delay guilty of possessing drug abuse instruments in violation of R.C. 2925.12(A).   The trial court

then sentenced Ford-Delay to 90 days in jail with 76 days suspended[2] on the condition that Ford-Delay have no similar violations for one year and that she attend a drug and alcohol assessment with follow up treatment. The trial court also ordered Ford-Delay to pay a $500 fine with $250 suspended. Ford-Delay thereafter filed a motion to stay the execution of her sentence, which the trial court granted.

{¶ 12} Ford-Delay now appeals from her conviction, raising three assignments of error for review. For purposes of efficiency, we will address Ford-Delay's second assignment of error first, as its disposition resolves the appeal.

**Second Assignment of Error**

{¶ 13} Under her second assignment of error, Ford-Delay contends that her conviction for possessing drug abuse instruments was not supported by sufficient evidence. We agree.

{¶ 14} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the

---

[2] Due to a mathematical error, the trial court initially stated on the record and in its sentencing entry that 72 days of Ford-Delay's jail sentence were suspended, when in fact 76 days were suspended based on the date that the trial court ordered Ford-Delay to report to jail. On November 24, 2021, the trial court issued an amended sentencing entry that corrected the error and reflected the correct number of days that were suspended from Ford-Delay's jail sentence.

essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

**{¶ 15}** As previously discussed, the trial court found Ford-Delay guilty of possessing drug abuse instruments in violation of R.C. 2925.12(A), which provides that:

> No person shall knowingly make, obtain, possess, or use any instrument, article, or thing the customary and primary purpose of which is for the administration or use of a dangerous drug, other than marihuana, when the instrument involved is a hypodermic or syringe, whether or not of crude or extemporized manufacture or assembly, and the instrument, article, or thing involved has been used by the offender to unlawfully administer or use a dangerous drug, other than marihuana, or to prepare a dangerous drug, other than marihuana, for unlawful administration or use.

**{¶ 16}** "To obtain a conviction under this statute, the state must prove that the offender had used the syringe [or hypodermic needle] to unlawfully administer, use, or prepare a dangerous drug." *State v. Greenway*, 1st Dist. Hamilton No. C-160511, 2017-Ohio-7729, ¶ 17, citing *State v. Young*, 5th Dist. Knox Nos. 16-CA-24 and 16-CA-25, 2017-Ohio-7051, ¶ 39, *State v. Lorenzo*, 9th Dist. Summit No. 26214, 2012-Ohio-3145, ¶ 20, and *State v. Davis*, 1st Dist. Hamilton No. C-110620, 2012-Ohio-2642, ¶ 8. Therefore, "an offender must have actually used the instrument, not merely have possessed the instrument with the intent to use it at a later time." *Davis* at ¶ 8.

{¶ 17} In *Davis*, the First District Court of Appeals held that the State had failed to establish a violation of R.C. 2925.12(A) where the evidence merely established that a hypodermic needle and syringe were found on a defendant who admitted to officers that he occasionally came to Ohio to buy heroin and that he had intended to buy heroin immediately before his arrest. *Id.* at ¶ 3 and ¶ 10. No heroin was found on the defendant and no heroin was found in the hypodermic needle or syringe. *Id.* at ¶ 3. Based on that evidence, the First District determined that the State had failed to present any evidence establishing that the defendant actually used the hypodermic needle and syringe to unlawfully administer or use a dangerous drug or to prepare a dangerous drug for unlawful administration or use. *Id.* at ¶ 10. Accordingly, the court found that the State had failed to prove all elements of possessing drug abuse instruments and reversed the defendant's conviction. *Id.* at ¶ 10-11.

{¶ 18} The Fifth District Court of Appeals reached a similar decision in *Young*. In that case, a police officer located hypodermic needles inside a bag that was found in the defendant's vehicle. *Young,* 5th Dist. Knox Nos. 16-CA-24 and 16-CA-25, 2017-Ohio-7051, at ¶ 40. At trial, the investigating officer testified that he could not tell if the hypodermic needles had actually been used for anything, and the State did not introduce any evidence establishing that the needles had been used by the defendant. *Id.* Since the State failed to present evidence establishing that the needles had been used by the defendant to unlawfully administer or use a dangerous drug or to prepare a dangerous drug, the Fifth District held that there was insufficient evidence to find the defendant guilty of possessing drug abuse instruments. *Id.*; *see also Lorenzo* at ¶ 20-21 (finding

insufficient evidence of possessing drug abuse instruments where the evidence merely established that the defendant had syringes in his office that were sealed in their original packaging).

{¶ 19} The instant case is analogous to *Davis* and *Young*, as the State presented no evidence establishing that Ford-Delay used the hypodermic needles in her purse to unlawfully administer or use a dangerous drug or to prepare a dangerous drug for unlawful administration or use. Specifically, there was no evidence of any drugs inside the vehicle in question or on any of the occupants, including Ford-Delay. There was also no evidence of drug residue on any of the needles. *Contrast Greenway*, 1st Dist. Hamilton No. C-160511, 2017-Ohio-7729, at ¶ 4 and ¶ 18 (evidence establishing that an officer observed a syringe on the floor near the defendant's right leg and that the syringe had drug residue inside of it was sufficient to establish a violation of R.C. 2925.12(A)); *Wadsworth v. Eutin*, 9th Dist. Medina No. 09CA0074-M, 2010-Ohio-4654, ¶ 11 (evidence establishing that police officers found pieces of a plastic bag with a powdery residue inside the defendant's car and syringes and a burnt spoon with residue on it inside the defendant's purse was sufficient to establish a violation of R.C. 2925.12(A)).

{¶ 20} Although the evidence established that Ford-Delay told Officer Smith that she and her counterparts had planned on buying drugs later, and even if we assume that Ford-Delay and her counterparts had intended to use the needles at issue to administer those drugs, the fact remains that nothing in the evidence established that Ford-Delay had actually used the needles to administer a dangerous drug or to prepare a dangerous drug for that purpose. Therefore, all elements of possessing drug abuse instruments in

violation of R.C. 2925.12(A) were not proven by the State at Ford-Delay's trial. For that reason, Ford-Delay's conviction for possessing drug abuse instruments was not supported by sufficient evidence.

{¶ 21} Ford-Delay's second assignment of error is sustained.

### First and Third Assignments of Error

Under her first assignment of error, Ford-Delay contends that the trial court should have granted her motion to suppress the hypodermic needles as evidence because she claims the police found the needles by illegally detaining her and by conducting an unlawful search of her purse. Under her third assignment of error, Ford-Delay contends that the jail sentence imposed by the trial court was an unconstitutional trial tax that punished her for pursuing her right to trial. Because we have sustained Ford-Delay's second assignment of error, we need not address her other two assignments of error; our resolution of Ford-Delay's second assignment of error requires that we vacate her conviction for possessing drug abuse instruments.

### Conclusion

{¶ 22} Having sustained Ford-Delay's second assignment of error and having overruled her first and third assignments of error as moot, Ford-Delay's conviction for possessing drug abuse instruments is vacated.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Robert F. Jacques
Christie M. Bebo
Hon. Gregory M. Gantt, Visiting Judge